## PITTS v. FLORIDA CENTRAL & PENINSULAR RAILROAD COMPANY.

1. Where an action is brought against a railroad company by one of its employees for personal injuries alleged to have resulted from the negligence of the former in furnishing for the use of the latter defective machinery and appliances, in the use of which, without fault on the part of the latter, he was injured, and a motion for a nonsuit is made at the close of the plaintiff's case upon the sole ground that, admitting the defendant's negligence, the defect complained of was so apparent and the use of the appliance so manifestly dangerous as that the plaintiff knew, or by the exercise of ordinary diligence could have known, not only of its existence, but of the danger attendant upon its use, and was consequently himself guilty of contributory negligence in continuing the use of such appliance, in determining whether the nonsuit moved should be awarded, knowledge of the defect and of the dangerous character of the appliance are both necessary considerations; and even though it might appear that the defect was known to the employee, a nonsuit should not be awarded, unless it further appeared, either that the plaintiff actually knew that the continued use of the defective appliance was dangerous, or that the defect complained of rendered the use of the appliance so obviously dangerous as that a person of his intelligence and understanding could readily perceive the danger. If in such case, upon the question of notice, whether actual or imputed, either as to the defect or the dangerous character of the defective appliance, the evidence be in conflict or inferences therefrom may be drawn favorable to the plaintiff, non-liability of the defendant cannot be adjudged as matter of law.

2. If upon the conclusion of the argument of a motion for a nonsuit the plaintiff so amends his declaration as that the facts newly alleged, if proven, would entitle him to recover, it is error for the presiding judge to either refuse a motion by the plaintiff to reopen the case to allow the submission of additional evidence in support of the amendment, or to impose upon the plaintiff as a condition to the grant of such a motion that he shall not himself be further sworn as a witness; and this is true, even though he had previously deposed to facts in apparent conflict with the facts alleged in the amendment to the declaration. The right to introduce competent evidence, from whatever source it may come, which will prevail against a motion for a nonsuit, is a substantial right of the plaintiff and should not be denied by the court.

*Simmons, C. J., concurring.*—Upon the merits of the case as it stood when the evidence closed, it would have been proper to grant a nonsuit; but the court, after permitting the plaintiff to amend his declaration, erred in refusing to reopen the case in order to allow him to prove by his own testimony the allegations of the amendment, the credibility of the witness being for the jury and not for the judge.

*Lumpkin, J., dissenting.*—1. It plainly appearing from the plaintiff's evidence as a witness in his own behalf, that before receiving the injuries complained of in his declaration, and which resulted from the defective condition of the engine upon which he was at work, he knew of the existence of the defects, and also knew—or, in the exercise of ordinary diligence, ought to have known—of the danger attendant thereon, that he nevertheless remained in the service of the company, and that his so doing was in no way attributable to any promise or agreement to have the engine repaired, it was clearly a case for the granting of a nonsuit.

2. When it became apparent to the plaintiff, after the evidence had been closed, that  a nonsuit would be granted, and he thereupon filed an amendment to his declaration, the allegations of which were palpably at variance in vitally important particulars with what he had already sworn as a witness with reference to matters concerning which he could not be mistaken, the court did not err in refusing to allow him to again take the stand for the purpose of " proving " the allegations of the amendment, and thus changing the entire character of his case, and putting himself in the attitude of swearing falsely in order to save a failing cause.

March 23, 1896.  Argued at the last term.

Action for damages.   Before Judge MacDonell.   City court of Savannah.  May term, 1895.

Pitts sued the railroad company for personal injuries sustained by him while in its employment as a fireman on a locomotive.   He was nonsuited; to which ruling, and to the refusal of the court to permit him to testify in support of an amendment he made at the trial, he excepted.   The declaration alleges, that the company negligently permitted the engine on which he was employed to become unsafe, in that the drawbar or coupling necessary to connect the tender to the engine had, from long and constant use and

inattention, become worn, defective and insufficient; whereby the space between the tender and the engine became so great that when the engine was stopped or started the tender was propelled and driven with great force against the chafing iron of the engine itself; and that on September 30, 1894, while he was performing his duties without fault and in the exercise of ordinary and reasonable diligence, standing upon the apron of the engine, the engineer suddenly and without warning applied and released the brakes, and by reason of the defective drawbar or coupling the tender was thrown with great force against the engine, knocking the iron apron from beneath plaintiff's feet, and hurling him backward from the engine to the ground.

At the trial plaintiff introduced two witnesses whose testimony tended to show, in brief, that there should be little or no space between the tender and the engine proper; that where such space exists it is covered by a flat piece of iron called an apron, which, if the floor of the tender be higher than that of the engine proper, should be somewhat curved to prevent it being knocked upward by any sudden movement; and that the engine is in unsafe condition with such space between it and the tender. Plaintiff testified that at the time of the injury the engine was moving four or five miles an hour at night. It was a shifting engine. He had been employed thereon but a short time, more than a week, about fifteen days. He was standing on the apron in order to get open the door of the fire-box, when the apron flew up and knocked him backward from the engine to the ground, producing the injuries complained of. The floor of the tender was an inch or an inch and a half higher than that of the engine proper, and the apron was what he would call flat, almost so. He is not a machinist, and does not understand the machinery of an engine. One or two days before he was hurt, he saw the space between the engine and tender (which he estimated to be three or four inches), when Crowley the foreman, and Burton the

master mechanic of the company, were coming over on this engine. Burton raised up the apron, and then told Crowley to take the engine in, repair it by taking up the slack, and have the boiler washed out. Plaintiff expected every day that the engine would be taken in and repaired. He could not open the door of the fire-box without standing where he stood, on the apron. The whole cause of the injury was the slack between the engine and tender, the knocking up of the apron. He had been firing an engine about a year; had been thrown around one off and on, but not as a fireman since 1882. He did not know the slack between the engine and tender was dangerous until he was hurt. He never saw the apron fly up before his injury; does not say it did not fly up. The reason he did not see it fly up was, he paid no attention to it. He did not consider it dangerous, but after Crowley and Burton spoke of it, he noticed it so as to learn all he could about machinery. He did not quit the road when he noticed it; wanted to stick to his job; had a family to support; does not think he would have quit on account of this space; did not know of any danger on account of it; did not think it would hurt a man. The promise to repair did not induce him to stay on the engine; he stayed to make a living. What Burton told Crowley had nothing to do with his staying there, for he did not know of the danger of the drawbar; could not tell anything about the matter. One could see the slack if on the ground, and notice it when a coupling was made; but he was looking out for signals, and did not watch the fireboard. He saw this same engine after the injury; the slack had been taken up, and was nearly tight; it had been repaired, and there was no play between tender and engine.

The amendment which was offered and allowed, alleged that about September 28, 1894, while plaintiff was employed as fireman, Crowley the foreman, and Burton the master mechanic of defendant, being on said engine, stated in plaintiff's presence, while in the act of examining the

engine, that it must be repaired at once; and Burton then and there instructed Crowley to have the engine repaired by taking up the space between the engine and the tender, thus curing the defects herein complained of. Crowley thereupon said he would at the earliest moment repair the defects; and plaintiff, believing and relying upon the promise and assurance of Burton that the defect would be repaired, remained upon the engine until September 30, when he was thrown therefrom by reason of its defective condition, sustaining the injuries complained of. While he was not aware that the defects in the engine were dangerous, until after his injury, yet had he known of the dangerous condition caused by said defects, he would, on account of said promise and assurance of Burton and Crowley that the defect would be repaired, have remained on the engine in the capacity aforesaid. From the time of said promise and assurance to the date of the injury, he of right could and did believe that defendant would have the engine repaired; but defendant disregarded said promise and assurance and did not repair the engine, but allowed it to remain so defective, etc.

Plaintiff then offered to testify to the facts alleged in this amendment. His testimony was excluded on the ground that it would be improper to allow him to testify further on these points; the court offering to receive such testimony from any other source.

*J. G. & D. H. Clark*, for plaintiff.
*Denmark, Adams & Freeman*, for defendant.

ATKINSON, Justice.

The facts are stated in the official report.

1. It may be assumed, from reading the evidence, that the jury might properly have found that the defendant was negligent. The question whether the plaintiff was himself guilty of contributory negligence, and as a consequence barred from recovery, he being an employee, is

likewise a question of fact, and turns upon whether the defect complained of was so apparent, and the use of the defective appliance was so manifestly dangerous, that the plaintiff knew, or by the exercise of ordinary diligence could have known, not only of the existence of the defect, but of the danger attendant upon its use.   Two things were necessary to convict him of negligence—knowledge of the defect, and knowledge of the dangerous character of the appliance in its defective condition.   If the plaintiff knew of the defect, but neither knew nor had cause to know that the defect which existed was of such a character as to render the appliance dangerous, then he could not be convicted of negligence in continuing its use.   It was admitted that he knew of the defect, but denied by him that he had any actual knowledge that the appliance, though defective, was dangerous, or that its continued use would likely result in injury to him.   Whether or not notice of danger in the continued use of the defective appliance could be imputed to him would depend upon its character, and upon whether it was in so obviously a dangerous condition as to convey notice to a person of his intelligence of the danger which might result to him in consequence of his continuing to use it.   Both of these inquiries involved issues of fact, and such issues of fact as a jury alone under our system of government is authorized to determine.   A jury might have well inferred from the evidence that though the plaintiff knew of the defect complained of, he did not know, or did not have just reason to know, that the appliance was in consequence dangerous and was likely to result in injury to him in the event he continued in the employment of the company, and to use the defective appliance furnished him.   It is not necessary to cite authority to the proposition, that whether or not a particular act be negligent is a question of fact for the jury; or to the further proposition, that if inferences favorable to a plaintiff and which would sustain his cause of action may be

reasonably drawn from the evidence submitted, the court has no power to award a nonsuit.

2. Even if the declaration required amendment, or it was necessary to supplement the evidence already introduced, the amendment as made stated beyond controversy a cause of action in favor of the plaintiff. See 100 U. S. Rep. 213. The amendment being allowed, he was entitled to prove it by any legal or competent evidence which he might have had at his command. It may be stated broadly that the plaintiff is entitled as a matter of right to introduce evidence the effect of which will be to save him from a nonsuit. This doctrine was recognized in the case of *McColgan* v. *McKay,* 25 *Ga.* 632. In that case, after the plaintiff had closed, the defendant moved a nonsuit which was granted. The plaintiff moved to be allowed to open his case and submit other evidence, the effect of which would have saved a nonsuit; this was refused by the court and the plaintiff's cause dismissed. This judgment was reversed, and Benning, Judge, speaking for the court, says: "It is almost a matter of course to let in evidence upon a point to save a nonsuit. The practice is commended by every consideration of expediency." In a later case, *Parker* v. *Fulton Loan & Building Association,* 42 *Ga.* 456, this court approved the doctrine of the case last above referred to, and again reversed the trial judge for refusing to open the case to receive evidence the effect of which would have saved a nonsuit. In the present case, however, the court offered to the plaintiff the privilege of introducing testimony other than his own in support of the amendment, virtually holding that as to the facts stated in the amendment the plaintiff was not a competent witness. Just why he is not a competent witness it is difficult for us to understand. It is true that in testifying to the facts stated in the amendment, it might have been necessary for him to qualify or explain, or, if you please, contradict his prior testimony delivered in the case;

and it is submitted that this, if an objection at all, does not go to the competency, but to the credibility of the witness.    In the case of King *v*. Teele, Lord Ellenborough stated the rule to be as follows, the question being as to whether one who admits himself to be an infidel is disqualified from giving evidence:    "An infidel cannot admit the obligation of an oath at all, and cannot therefore give evidence under the sanction of it.    But though a person may be proven on his own showing, or by other evidence, to have forsworn himself as to a particular fact, it does not follow that he can never afterwards feel the obligation of an oath; though it may be a good reason for a jury, if satisfied that he had sworn falsely on the particular point, to discredit his evidence altogether.    But still that would be no warrant for the rejection of the evidence by the judge; it only goes to the credit of the witness on which the jury are to decide."    So in the present case, the fact that the plaintiff had previously contradicted himself concerning the matter to which he subsequently offered to testify, may afford good reason for the jury to totally discredit him, but it affords no reason why the judge as a matter of law should hold him incompetent to testify. The judge is not the keeper of the conscience of the parties, and while it is proper that he should call the attention of the witness to the gravity of the situation in which he might by contradictory testimony place himself, he has no power to exclude the witness from testifying, even though he might have reason to believe that the testimony if delivered would be false.

The Chief Justice is of the opinion, that while the circuit judge in the first instance properly granted a nonsuit, yet he erred in the second instance in denying the privilege to the plaintiff to testify in his own behalf to the facts stated in the amendment, in order to save a nonsuit.

*Judgment reversed.*

LUMPKIN, Justice, dissenting.

Being unable to concur in the judgment rendered by a majority of the court, I will undertake to state the reasons for my dissent.

1. It will be observed that the Chief Justice agrees with me that, upon the merits of the case, tested by the evidence actually introduced in behalf of the plaintiff, it would have been proper to grant a nonsuit. It is perfectly clear from the evidence that the plaintiff knew of the defects in the engine from which his injuries resulted, and I think it equally clear that he knew, or ought to have known, of the danger to which he was exposed by remaining at his post and discharging his duties upon that defective engine. The case, therefore, is, to my mind, plainly one in which the plaintiff deliberately and voluntarily assumed the risks of the situation; and this being so, he was not entitled to a verdict upon the evidence as it stood when the motion for a nonsuit was made.

2. In his examination as a witness in his own behalf, the plaintiff testified that he heard Burton, the master mechanic of the company, tell Crowley, the foreman of its machine shops, to take the engine in and repair it; and that he (the plaintiff) expected every day it would be taken in and repaired. He further swore, positively and unequivocally, that the "promise" to repair (evidently alluding to the instructions which Burton had given to Crowley in the plaintiff's presence) did *not* induce him to stay on the engine—that he stayed to make a living, and that what Burton told Crowley *had nothing to do with his staying there*. In the amendment offered to the declaration, it was alleged that Burton instructed Crowley to have the engine repaired; that Crowley thereupon said he would, at the earliest moment, repair the defect; and that the plaintiff, "believing and relying upon the promise and assurance of Burton that the defect would be repaired, remained upon the engine until September 30, when he was thrown there-

from by reason of its defective condition, sustaining the injuries complained of"; and further, that "had he known of the dangerous condition caused by said defects, he would, on account of said promise and assurance of Burton and Crowley that the defect would be repaired, have remained on the engine in the capacity aforesaid. From the time of said promise and assurance to the date of the injury, he, of right, could and did believe that defendant would have the engine repaired; but defendant disregarded said promise and assurance, and did not repair the engine, but allowed it to remain so defective."

The amendment was allowed, and the plaintiff was then offered as a witness to testify "to the facts alleged in this amendment"—which, of course, would embrace all the allegations above set out. The court excluded the testimony thus offered, on the ground that it would be improper to allow the plaintiff to testify further on these points, but stated that testimony of this character coming from any other source would be received.

The conflict between the plaintiff's statements while a witness on the stand, and some of the allegations contained in his amendment, is plain and palpable; and this conflict relates to a matter as to which he could not have been mistaken. He said, in the first instance, that he did *not* remain on the engine because of any promise to repair it, and that what Burton told Crowley had *nothing to do with his staying there.* He alleged in his amendment that he *did* remain because of such promise, relying upon the assurances of Burton and Crowley that the defect would be repaired. It must be borne in mind that, in offering to testify to the allegations of the amendment, the plaintiff did not represent, or even pretend, that his recollection as to these matters was at fault when he was testifying about them on the stand. The spectacle therefore presented to my mind is simply this: the plaintiff perceived, from the discussion which was evidently had upon the motion to nonsuit, that

he had practically sworn his case out of court, and then wished to change its character and get a hearing before the jury by varying his testimony in vitally important particulars. I cannot, of course, say with absolute certainty that he deliberately intended to commit the crime of perjury; but it is evident from the record that the trial judge was of the opinion that the plaintiff contemplated putting himself in the attitude of swearing falsely in order to save a failing cause. The refusal to allow him to again take the stand for the purpose indicated could have been based upon no other reason. The presiding judge manifestly acted under the feeling that at least a semblance of common honesty and fair dealing should be observed in the trial of the case, and that the cause of justice should not be prostituted in her courts; and consequently he very naturally was unwilling to permit such an exhibition as that outlined above.

For my part, I am willing to leave a matter of this kind to the sound discretion of the trial judge. Being upon the scene, and conversant with all the minor details and circumstances surrounding the particular case with which he has to deal, he is much better enabled to pass fairly and intelligently upon the question thus presented than would a reviewing court, having before it merely a meagre narrative in writing of the more pregnant facts, necessarily more or less incomplete and imperfect. In the present instance, the plaintiff had been fully examined upon the identical points as to which he asked leave to again testify. In asking to be allowed to take the stand a second time, he did not undertake to assert that he was mistaken as to any fact previously testified to by him, or had been misunderstood in regard thereto, and therefore desired an opportunity to correct statements unwittingly made by him; nor did he attempt to offer any explanation tending to show that he had any right to be re-examined as a witness as to the matters alleged in his amendment, or that the ends of justice would thereby

be subserved.   On the contrary, his offer was purely a naked one to swear to the truth of the allegations introduced by his amendment—an offer which, if carried into effect, would necessitate his impeaching his previous testimony upon vitally material points, and bring upon himself the infamy of willful perjury.   I am by no means sure that there is no restriction whatever upon the privilege of testifying in one's own behalf, or that a party can, as matter of strict right, insist upon being allowed to testify more than once during the same trial; and where a party, after having been fully examined as a witness, makes an offer which the trial judge has ample reason to regard as one involving the commission of perjury if the party is allowed to again take the stand and carry out his undertaking, it is clear to my mind that the judge's refusal to give countenance to such a disgraceful and perfidious performance can involve no abuse of discretion, nor properly be regarded as otherwise than eminently right and undeniably just.   I cannot give my sanction to a judgment which overrules the trial judge in pursuing exactly such a course in the case now under consideration.

I do not think the cases cited by Mr. Justice Atkinson— which unquestionably strongly sustain and fortify the position that a trial judge ought, as a general rule, to reopen a case and receive evidence for the purpose of saving a nonsuit—apply to a case like the one in hand, involving the reintroduction of the same witness, already fully heard— not for the purpose of correcting or elucidating his testimony as given in the first instance, but with a view to contradicting and impeaching himself by giving an entirely different version as to facts concerning which he had positive knowledge, and about which he could not possibly have been mistaken when testifying at the outset.   In my judgment, this case stands upon its own peculiar facts, in view of which I adhere to the proposition that this court ought not to compel a trial judge, even though he has allowed an

amendment to a declaration, to permit the enactment of such a travesty of justice as was proposed in the instance now under consideration.

One other view of the matter strengthens my conclusion that the judgment ought to be affirmed. This court is asked to review the ruling complained of, in order to ascertain whether or not the plaintiff was thereby deprived of any substantial right, and was really injured by it. It is perfectly obvious that, in order to save his case, it was incumbent upon him to prove all the material allegations of his amendment. He could not, under the circumstances, even hope to successfully prove them by his own testimony without committing perjury. This being so, it is entirely immaterial whether he was, or was not, ready to perjure himself, and would have done so if permitted. If he did so intend, certainly the judgment ought not to be reversed. If he did *not* so intend, his testimony would have been utterly ineffectual to save his case, and refusing to allow him to again take the stand in no wise operated to his injury, and therefore presents no cause for reversing the judgment of the court below.