## BOWEN, JEWELL & COMPANY *et al.* v. ADAMS.

1. (a) Though a servant assumes the ordinary risks of his employment and is bound to exercise his own skill and diligence to protect himself, this assumption of risk, where the employment concerns the operation of a machine with a defective or dangerous appliance, is subject to the limitation that the servant must not only have actual or imputable knowledge of the defective machinery, but also of the danger attendant

upon its use, where such danger is not so obvious as to be apparent to a person in the exercise of ordinary care. With respect to such unassumed risks the master is under duty to warn the servant.

(b) The petition was not subject to general demurrer.

2. An amendment which sets forth an act of negligence additional to others originally pleaded as being a concurring and contributing cause of the injury, for which damages are asked in the original petition, does not add a new and distinct cause of action.

3. There was sufficient evidence to support the verdict.

Argued June 12,—Decided December 21, 1907.

Action for damages. Before Judge Holden. Hancock superior court. December 7, 1906.

*William H. Burwell,* for plaintiffs in error.

*L. D. McGregor* and *William H. Fleming,* contra.

EVANS, P. J. This is an action by Anna Drucilla Adams against Bowen-Jewell Company, to recover damages for the negligent killing of the plaintiff's minor daughter, who at the time of her death was an employee of defendants. The material parts of the petition relied on as showing that the death of plaintiff's daughter was occasioned by the defendants' negligence may be briefly summarized as follows: The defendants operated a bag factory, and the plaintiff's daughter, aged sixteen, in good health and of average intelligence, was employed in the printing and press room of defendant's factory. In this room were three printing machines. The particular machine at which plaintiff's daughter worked was what is known as a single printing machine, of old pattern, a second-hand machine, and unlike the other two machines, which were of modern type. The duties of the employee were to feed the single machine, and to clean it when ordered by the defendant's foreman. One Zimmerman was employed by the defendants to act as "vice-principal or quasi master" over the defendants' servants working in the printing room. On the day of the catastrophe Zimmerman stated to the employees of defendants in the printing room that he had filled all orders on hand, and directed the employees to clean the printing machines underneath. It was Zimmerman's duty to throw off the main belt that ran from the main shafting to the shafting that was connected to the printing machines, which duty he failed to perform at the time of giving the command to clean the machines. Instead of throwing off the main belt, he pulled a lever that threw the minor belt from the machine where the employee worked to a

loose wheel, which caused this machine to stop without stopping the other two machines. This lever was used for the purpose of throwing the minor belt back to the wheel of the printing machine, and putting it in motion. These conditions were not patent, and were unknown to the employee, who had never been warned of the dangers incident thereto. There were two rods underneath the single machine; one of them connecting the levers, and by moving the rod a certain way the lever would shift the belt from the loose pulley to the rigid pulley on the machine, and the machine would be put in motion. The employee did not know that by rubbing the rod attached to the lever the belt would be shifted from the loose pulley to the machine; nor was such condition visible; nor was the employee warned of the danger. Neither did the employee know that the rod under the machine was attached to the lever. In obedience to the command of Zimmerman, after the single printing machine had been stopped, the employee went underneath the machine for the purpose of cleaning it, and while so employed she moved the rod attached to the lever so as to cause the machine to be put in motion, and without fault on her part she was instantly killed by the machinery. It was alleged that the single printing machine was not fit for the purpose for which it was used; and that it was a risk to work at the same, on account of its pattern and the length of time it had been used.

An oral motion was made to dismiss the petition, because the defendants were not liable in damages for the death of the plaintiff's daughter, occurring in the manner therein alleged. The court refused to dismiss the petition, and this is assigned as error.

1. The chief dereliction of duty of the master, as alleged, consisted in his failure to warn the servant of the danger incident to her employment, which danger was latent in character, and unknown to the servant. The servant worked at the machine which killed her; but in avoidance of the possible inference from that fact of her knowledge of the machine, and the danger incident thereto, it was alleged that the rod attached to the lever was underneath the machine; that she did not know it was so attached; that the danger from the mechanism was not patent; that she did not know of the danger, and had not been warned as to the same. These allegations assign a sufficient reason why the servant did not apprehend the unknown peril associated with her employment.

*Ga. R. Co.* v. *Rayford,* 115 *Ga.* 937 (42 S. E. 234). The law imposes upon the master, if there are latent defects in the machinery, or dangers incident to an employment unknown to the servant, of which the master knows or ought to know, the duty to give the servant warning in respect thereto. Civil Code, §2611. The servant assumes the ordinary risks of his employment, and is bound to exercise his own skill and diligence to protect himself. Civil Code, §2612. This assumption of risk is subject to the limitation that the servant must know, or in the exercise of ordinary care should know, not only of the existence of the defect in the machinery, but of the danger attendant upon its use, where such danger is not so obvious as to be apparent to a person of ordinary intelligence. *Pitts* v. *Fla. Cent. R. Co.* 98 *Ga.* 655 (27 S. E. 189). It was alleged that the single printing machine was unfit and dangerous on account of its pattern, and the long time it had been in use. There were two rods underneath it, one attached to the lever which started the machine, and the other connected with other parts of the machinery in such a way that it was not dangerous in handling during the cleaning process. But there lurked peril in the rod attached to the lever. The petition affirms the servant's ignorance of the danger, and that the peril was not so obvious as to be discernible by the use of ordinary diligence. Under such circumstances the master owed a duty to the servant to warn her of the hidden danger, and the servant, not knowing of the peril, and engaged in the work of cleaning the machine under the master's order, had a right to rely on the master to perform this duty. We are of the opinion that as against a general demurrer the declaration set forth a cause of action.

2. The plaintiff voluntarily amended her petition by striking paragraph sixteen, which alleged that the servant, in obedience to the order of the superintendent, went under the single printing machine, after the same had been stopped, and began cleaning it; that while in the execution of this order she moved the rod that ran underneath the machine, which was attached to the lever, in such a way and manner as to cause the machine to be put in motion, and that this was without fault on her part, she being ignorant of the danger to which she was exposed at the time she was killed. The amendment proposed to substitute for the stricken paragraph allegations to the effect that in obedience to the order of the superin-

tendent she went underneath the single machine, after the same had been stopped, and began cleaning it, and while so engaged the machine, without fault on her part, was put in motion by the shifting of the minor belt from the loose to the rigid pulley, which controlled the motion of the machine; that the shifting of the belt could have been caused and was caused in one of two ways: either in the manner as described in the stricken paragraph or by friction of the belt on the loose pulley, which would force the belt to jump or slide back to the rigid pulley. It was further alleged that this occurrence happened frequently before the catastrophe, and was due to the imperfect adjustment of the belt and the loose pulley, by allowing too much friction between the two; and that the employee was ignorant of this condition of the machine. The defendants objected to the amendment, because it was contended that it added a new and separate cause of action. No point was raised that the allegation as to the manner or cause of the machine being put in motion was expressed in the alternative. The new matter introduced in the amendment, which it is contended adds a new cause of action, is the allegation that the belt and the loose pulley were so imperfectly adjusted that the friction of the belt on the loose pulley forced the belt to jump or slide back on to the rigid belt, and thus to start the machine. At most this is but an additional allegation of negligence on the part of the defendant. Where a petition sets out certain acts of negligence to show a violation by a defendant of plaintiff's right, such petition may be amended by setting out additional acts of negligence to show the same violation of the same right. *City of Columbus* v. *Anglin,* 120 *Ga.* 785 (48 S. E. 318).

3. Upon the conclusion of the plaintiff's testimony the defendants moved for a nonsuit, which was refused by the court. The defendants then introduced testimony, and a verdict was rendered in favor of the plaintiff. Error is assigned upon the refusal of the nonsuit, and because the verdict is without evidence to support it. Proof was submitted to support all the substantial allegations of the petition. It appeared that the two modern machines were equipped with a safety clutch which held the lever when the belt was shifted from the rigid to the loose pulley. Plaintiff's daughter usually worked at one of these new machines. The old single printing press was unprovided with this safety contrivance, and sometimes a rope was used to tie the lever so as to prevent the belt being inad-

vertently or accidentally shifted to the rigid pulley so as to start the machine. At the time the plaintiff's daughter met her death the lever was not tied with a rope. The single printing machine was equipped with a lever on either side, designed to shift the belt back and forth from the rigid to the loose pulley. The levers were connected underneath the machine by a rod. When the body of the employee was taken from under the machine, her hand with rag in it was on this shifting rod. There was another rod near to and parallel with the rod connecting the levers. Four employees of the press-room were introduced as witnesses, three of whom testified that they were not warned, nor did they know, of the danger of rubbing the rod underneath the machine. The fourth, who was introduced by the defendants, did not testify upon this subject. The superintendent said that he warned plaintiff's daughter that when she went to clean the press to always tie the shifting rod lest she might get hurt, and knew that the employee had seen the press tied. He further testified: "I did not give Celia [the employee] any different instructions from the others." Inasmuch as other employees who testified denied receiving any instructions collectively or individually, and as the superintendent contended that he gave the deceased employee no different instructions than he gave the others, the jury could infer that the employee had not been warned of the peril incident to the shifting rod because of the failure to provide a safety clutch to prevent an involuntary shifting of the belt. Besides, as the rod was underneath the machine, and concealed from view, and in close proximity to another rod which did not control the motion of the machine, the jury might also infer that the danger was latent, and not discoverable by a person of average intelligence in the exercise of ordinary care. The printing-press was of complicated mechanism. The deceased employee was sixteen years of age, and had been working in the printing room but a few months, most of the time using one of the new machines which were provided with safety appliances. There was testimony that it was the duty of the room foreman to stop the machines when they were cleaned, and that this could only be done without danger to those engaged in cleaning the presses by throwing the belt from the shafting above. The press was not stopped in this manner upon the occasion when the plaintiff's daughter was killed. Immediately after her death an order

was given that the belts were to be thrown off from the shafting above when the presses were cleaned, and the employees were ordered not to get under the presses unless this was done, and the danger of doing so was then pointed out. It did not appear that the employee had ever used the lever. The only contested issues in the case were the negligence of the defendants, and the lack of diligence on the part of the employee; and on these issues there was sufficient evidence to uphold the verdict.

*Judgment affirmed. All the Justices concur, except Holden, J., who did not preside.*