No. 30.—A. R. FREEMAN, plaintiff in error, *vs.* THOMAS L. ROSS, survivor, &c. defendant in error.

[1.] Where a draft was drawn by H, on R & R, co-partners, by agreement with S R, one of the firm, in consideration of a private debt due from S R to H, which draft, when presented by the drawee, was accepted by S R in the name of the firm; and where, after the death of S R, suit was brought by

an indorsee of said draft, against R, surviving co-partner of said firm of R & R, and H was offered by R as a witness, to prove the consideration for which said draft was given, and objection was made, that H was incompetent, because if S R had committed a fraud on his partner, by accepting said draft in their name, H, for whose benefit it was done, was a party to it, and liable therefor to R, in the event of a recovery against the latter : *Held*, that such liability of the witness was too remote to exclude his testimony.

[2.] Where one partner accepts a draft drawn upon his firm, on account of a private debt of his own, and without the scope of the partnership, and such draft comes into the hands of a *bona fide* holder for a valuable consideration, without notice of defect in the consideration : *Held*, that the partnership is liable to pay the same.

[3.] If such negotiable security be *overdue*, at the time it is received, this circumstance constitutes notice of fault in the consideration, if any there be, to him who receives it, after it is thus overdue.

[4.] A draft which has no time of payment expressed, is payable instantly on presentment ; and if it be presented by the drawee to one of the firm, who does not pay it, but writes an acceptance on it in the name of the firm, it is due from the time of presentment ; and of course *overdue*, if it was not paid upon such presentment, but received back by the drawee and put into circulation.

Assumpsit, &c. in Bibb Superior Court.    Tried before Judge Powers, November Term, 1853.

This was an action by A. R. Freeman, as indorsee, against Thomas L. Ross, as survivor of the firm of Ray & Ross, as acceptors upon the following draft :

$100.                                        Macon, Feb. 28th, 1851.
   *Messrs. Ray & Ross*—
       Will please pay to the order of Charles H. Freeman, one hundred dollars, and charge to account of y'r ob't ser't,
                                                T. C. HOWARD.
   Indorsed, pay to A. R. Freeman or order.
                                                C. H. FREEMAN.

Accepted by Ray and Ross—the acceptance being made by Samuel J. Ray, one of the firm, in the name of the firm.

The defendant, Ross, pleaded that this acceptance was for

a debt due by Ray, individually, and not by the firm, and was not done by his knowledge or consent.

Upon the trial, defendant offered the depositions of the drawer, Thomas C. Howard, to which plaintiff objected, on the ground that he was interested, and incompetent. The Court over-ruled the objection, and plaintiff excepted.

The evidence showed that the draft was for a debt due by Ray, before the partnership with Ross; that it was accepted by Ray in the firm name, when presented, and was endorsed to the plaintiff, after it was accepted.

The plaintiff's counsel requested the Court to charge—1st. That the acceptance in question, though binding upon Howard, the drawer, was not binding upon Ray & Ross, till after it was accepted by them, or one of them, in the name of the firm; and inasmuch as the acceptance specifies no time when it shall fall due, it is due upon demand, and is negotiable.

2nd. That though Ray committed a fraud upon Ross, his partner, in giving the acceptance, if the drawee, Freeman, was innocent of any fraud or gross laches, in taking the acceptance, it is good in his hands; and more particularly is it good in the hands of any *bona fide* holder, without notice of a participation in the fraud.

The Court declined so to charge, and plaintiff excepted thereto.

The Court charged, " that if the firm name of Ray & Ross was placed on the draft, by Ray alone, to pay a debt of his own, outside the partnership business, without the knowledge or assent of Ross, then Ross was not bound".

To this charge plaintiff excepted. The Court farther charged, " that the fact that Ray & Ross, as occasion required, used the firm name in signing notes, acceptances, &c. to raise money for the use of the firm, raised no inference of authority to Ray, to use the name of the firm in payment of his individual debt".

To this charge plaintiff excepted. The Court charged, that the negotiability of the instrument, so far as plaintiff desired to place himself in the situation of an innocent purchaser, anterior to its presentation to Ray & Ross. The acceptance by

them, and the then placing the order in circulation, without any definite time to run, was not contemplated by the parties when it was made. Freeman should have demanded the cash when the order was presented; and on failure of Ray & Ross to pay, he should have notified Howard. He had no right to receive an acceptance from Ray, and then place the order in circulation. The purchaser, after that, took it with knowledge of this suspicious circumstance on its face. Plaintiff had no other rights, then, than the holder of a paper, purchased after it was due.

To all of this charge, plaintiff excepted.

On these exceptions, error has been assigned.

HALL & HALL, for plaintiff in error.

STUBBS & HILL, for defendant in error.

*By the Court.*—STARNES, J., delivering the opinion.

[1.] The testimony of Thomas C. Howard was offered by the defendant in the Court below. The witness was the drawer of the draft on which suit had been brought against the defendant, as surviving co-partner, and the plaintiff was the indorsee of the person in whose favor the draft was drawn. It was objected, that Howard was an interested witness; that if the draft was not given for a partnership transaction, and Ray, the deceased partner, who had negotiated the arrangement with Howard, was not authorized to do so, in the name of the firm, Howard, being in conspiracy with him to defraud the other partner, would be liable to Ross, if a recovery were had against the latter.

The defendant answers this by saying, that Howard, as drawer, is liable on the draft to the indorsee; and even if liable to Ross, in the event contemplated, his interest is balanced. The plaintiff replies, that he is not liable to the indorsee, because the draft was put into circulation by the acceptance, without notice to Howard, and was a fraud upon him.

We have not time to discuss this last proposition. Let it be admitted as true, and yet, Howard's liability to Ross is too remote to disqualify him as a witness. It grows out of a supposed *tort*, and depends upon proof of that *tort*. It is not "direct, vested, immediate", but "remote, uncertain and contingent". It does not result from the verdict in the case. Ray may have defrauded Ross in the transaction, and Howard have known nothing of it, and have drawn the draft by understanding with Ray, in perfect good faith. His interest, consequently, is not such as excludes his testimony. (1 *Greenlf*. 397.) *Blake vs. Irish*, (8 *Shep*. 450.) *Leroy Sneed vs. Thos. Hughes*, decided at last Columbus Term. (14 *Ga. R.* 542.)

[2.] The main point in this case grows out of the question of Ross's liability on this instrument, which, it is insisted, came lawfully into the hands of the plaintiff, or his assignor, as a negotiable security.

It is contended that Ross is liable in this transaction, because that plaintiff, deriving title from Charles S. Freeman, is a *bona fide* holder of this draft, for a valuable consideration. That even if this were not a partnership transaction, and Ray was not authorized to accept, in the name of the firm, and did so in fraud of Ross, yet, as Ray did accept, while the partnership was existing, and so put this negotiable security into circulation, his partner is liable thereon. This position was sustained at the bar, by several cases of high authority. These cases put the doctrine on those principles of the law merchant, which regulate such negotiable securities, and on the "broad general principle, that whenever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss, must sustain it".

[3.] But this doctrine applies to such securities, only when they are received by a *bona fide* holder, *without notice of the fault in the consideration*. To have the benefit of this principle, the plaintiff must have received the draft in question, without such notice. It becomes important, therefore, to ascertain what constitutes such notice.

We are informed, that the fact that such an instrument is-

overdue "is alone such a suspicious circumstance as makes it incumbent on the party receiving it, to satisfy himself that it is a good one; and that if he omits to do so, he takes it on the· credit of the indorser, and must stand in the situation of the person who was holder at the time it was due". (*Ch. on Bills*, 217.)

[4.] Was this draft overdue, when taken by plaintiff; or rather, is it to be regarded as overdue, when received by Charles S. Freeman, from Ray?

"Instruments expressed to be payable on demand, or having no time of payment expressed, are payable instantly on presentment, without any allowance of days of grace". (*Ch. on Bills*, 376.) This would be true of bills payable at sight, but for the custom, allowing grace. (*Ch. on B.* 375.) This *is* the law now in our State, even as to bills drawn at sight. (*Cobb's Dig.* 522. *Act of February 8th*, 1850.)

The draft in this case, as it had "no time of payment expressed", was consequently due and payable "instantly on presentment"; and when presented to Ray, as one of the firm on whom it was drawn, and received by him, it was instantly due and payable. Not being then paid, but received back by Freeman with Ray's acceptance instead, it was of course *overdue*. Charles S. Freeman must be held, therefore, to have thus taken it with the notice which is attached to an over-paid and dishonered bill. He knew that it was not paid at maturity; he took the acceptance of Ray, in lieu of payment; he put it afterwards into circulation, and he and the plaintiff who claims under him, and can have no more rights in the premises than he had, must abide by the consequences.

If the plaintiff, insisting that the defendant is liable to him, although wronged by the act of his partner, in giving this acceptance, meets him with an inflexible rule of commercial law, he cannot complain when defendant opposes him with a principle of mercantile law, equally as inflexible. Nor ought he to expect, by virtue of a rule which the exigencies of credit and commerce set up, in opposition to the natural justice of a case,

to hold Ross liable on this draft, and yet, himself, evade the operation of a similar principle of the law merchant.

In this view of the case, the plaintiff took with notice of any defect which might exist in the consideration, and must submit to the defence which is made, if the evidence sustain it.

This was, substantially, the view submitted by the Court to the Jury. His Honor, in addition, charged (as requested by the plaintiff) that if, from the evidence, the Jury believed that Ross had given his assent to the arrangement and acceptance, he was liable.

It was objected, that in giving this' instruction, the Court destroyed its effect, by animadverting, in a peculiar way,. upon the conduct of a former Jury, who had returned a verdict in the case, contrary to the charge of the Court. We do not give this effect to what the Court said on this subject, as it reaches us in the record ; and do not, accordingly, find error therein.

Judgment affirmed.