## TEASLEY *v.* BRADLEY *et al.,* administrators.

1. The statute of limitations does not begin to run in favor of one occupying towards another the position of a continuing and confidential agent for the purpose of collecting, investing, and taking care of funds of the latter, his duties as to the same being, in substance, those of a steward or factor, and running on from year to year, until such agent has rendered an account, accompanied by an offer to settle, or there has been by the principal a demand for a settlement and a refusal to pay by the agent, or there has been an express repudiation of the agency, or until there has been such a change in the relations of the parties as would warrant the inference that the confidential agency had in fact ceased. In the latter event the law would presume a demand after the lapse of a reasonable time, and from such time the statute would begin to run.

(*a*) Applying the rule above announced to the allegations of the present petition, it was not open to a demurrer alleging that the plaintiff's cause of action, or any portion thereof, was barred by the statute of limitations, or that the same had become stale.

(*b*) The first amendment to the plaintiff's petition was but an amplification of the allegations in the original petition, which set forth the relations existing between the plaintiff and the defendant as to the management by the latter of the former's estate.

(*c*) The evidence introduced in behalf of the plaintiff tended to establish the allegations of the petition, and authorized a recovery of

32

at least a portion of the amount sued for.    There was, therefore, no error in refusing to grant a nonsuit.

(*d*)  Certain portions of the charge which were complained of were substantially in accord with the rule above laid down.

2.  An agent who merely collects money for another is accountable for the same at once, and the statute of limitations begins to run against the principal certainly from the time when he knows the agent has made the collection.

3.  Money loaned with no agreement as to time of repayment is in law due immediately, and the statute of limitations begins to run at once against the lender.

4.  Since the passage of the uniform procedure act of 1877 (Civil Code, § 4833), a petition which sets forth a legal cause of action, though using terms appropriate to an equitable proceeding, in so far as the same does not seek any extraordinary relief, is not demurrable on the ground that the plaintiff had an adequate remedy by bringing an action at law.

5.  One who with the acquiescence of an heir at law takes possession without administration of the estate of the deceased, and thus receives the share of such heir in that estate upon an agreement to manage and invest the same for the latter's benefit, is accountable directly to the heir for the same, and can not defeat a suit brought against him by the heir by setting up that the right of action was in the administrator of the decedent.

6.  An admission of liability contained in an offer to settle, brought about by a simple demand for settlement, is not inadmissible on the ground that such admission was "made with a view to a compromise," when there is nothing whatever to indicate that there has been any effort to compromise, and when it can not be inferred from the circumstances under which the offer was made that there has been such an effort.

7.  It is always proper to overrule a "speaking demurrer."

8.  In the trial of an action for account and settlement, a paper embracing a calculation made by one other than the defendant, and with the making of which he had nothing to do, is not admissible in evidence against him.

9.  Where in the trial of an action for account and settlement the defendant pleads payment and introduces evidence in support of this defense, the court should not fail to call the jury's attention thereto; the more especially when failing to do so leaves standing no defense except the statute of limitations; and the charge relating to this defense was not free from error.

10.  Such of the other questions raised in the record as will probably arise on another trial are dealt with in the opinion.

Argued March 12,—Decided April 9, 1900.

Equitable petition.  Before Judge Reese.  Hart superior court.  March term, 1899.

*Asbury G. McCurry* and *T. W. Teasley,* for plaintiff in error, cited, as to limitation of action:　13 Am. & Eng. Enc. L. 677, 682, 692, 729, 730, 948, 950, 968, 614, and cit.; Civil Code, §§ 3765, 3767, 3768, 3772, 3774, 3775, 3939; 4 *Ga.* 122; 5 *Ga.* 486; 71 *Ga.* 95; 84 *Ga.* 79; 87 *Ga.* 268; 88 *Ga.* 333; 7 *Ga.* 573; 18 *Ga.* 520; 19 *Ga.* 153; 28 *Ga.* 38; 29 *Ga.* 651; 64 *Ga.* 768; 77 *Ga.* 29; 8 *Ga.* 97; 12 *Ga.* 9; 59 *Ga.* 782; 98 *Ga.* 550; 9 *Ga.* 413; 49 *Ga.* 431; 55 *Ga.* 689; 81 *Ga.* 611.

*Joseph N. Worley, O. C. Brown,* and *W. L. Hodges,* contra, cited, as to limitation:　7 *Ga.* 154; 8 *Ga.* 97; 11 *Ga.* 195; 64 *Ga.* 508; 72 *Ga.* 412 (3); 85 *Ga.* 331; 98 *Ga.* 518; Id. 484; Civil Code, § 3198; 1 Wood, Lim. 340; 2 Id., under "Agency." As to compromise:　59 *Ga.* 34; 64 *Ga.* 172; 91 *Ga.* 590.

Cobb, J.　On February 17, 1898, Laura Sadler brought suit against Isham A. Teasley, alleging in her petition, substantially, the following:　Plaintiff, Cyntha, Martha, and Mary Sadler were the children of James and Priscilla Sadler.　Martha married the defendant.　Their mother having died, their father married a rich widow, and in 1863 moved to her home and left his plantation, and personalty thereon, under the control and management of defendant, with the understanding that he was to manage the same for the benefit of those interested.　On April 16, 1866, James Sadler, in consideration of love and affection, conveyed the plantation, consisting of 311 acres, to plaintiff, Cyntha, and Martha.　Plaintiff and Cyntha lived with defendant on the place until 1874, when Cyntha died, leaving her estate "in the custody and control" of defendant. Plaintiff at the solicitation of defendant lived in his family from the date of his marriage until a recent date, a period of forty-four years; during all that time performing labor, manual and otherwise, in and about the household, and living meanwhile in a most frugal manner.　Plaintiff trusted defendant with the absolute control and management of all her property, and turned over to him during the years 1869, 1872, 1874, and 1877 sums of money aggregating $1,700, upon his statement that he would take the money and loan it at a good rate of interest; and in like manner for a like purpose plaintiff turned over to defendant $300 in 1873; all of which he received in trust for

plaintiff, stating that he would render a just and true account when called upon,.which he has failed to do. Defendant had control of two places in which plaintiff was interested, and from one of these, in which she inherited an interest from her father, collected in 1872 and 1873 rent belonging to plaintiff amounting to $15 each year, and from 1874 to 1876, inclusive, he collected $25 per year, and from the other place he collected plaintiff's interest in the rents from 1873 to 1897, inclusive, amounting to $100 per year; he having agreed to manage the farms, collect the rents, hold them in trust for the parties interested, and render a just and true account when demanded, which he has failed to do. Defendant has loaned the different sums belonging to plaintiff at a high rate of interest and collected the same. In August, 1897, plaintiff demanded of defendant that he pay over to her the amount due her, which he refused to do. The prayer of the petition was for an accounting, and judgment in favor of plaintiff for such an amount as should be found due. By amendment plaintiff alleged: Defendant was her continuous general agent to invest, keep, control, and reinvest all funds and property of hers that went into his possession, without accounting to plaintiff until a demand was made. No such demand was made until 1897. Plaintiff " actually or constructively received " her interest in the estate of her deceased sister Cyntha, and afterward turned the same over to defendant to be dealt with in the same manner as her other property in his hands. To the petition and amendment the defendant filed demurrers, both general and special. The court overruled the demurrers, and this is one of the errors assigned. The answer of the defendant denied all allegations seeking to charge him with any liability, set up the statute of limitations as a defense, and alleged that on a fair settlement it will appear that he owes the plaintiff nothing; that the amount due by plaintiff for board, medical attention, and other living expenses, all of which were provided by defendant, and other charges against plaintiff which were paid by defendant at the request of plaintiff, would more than equal any claim that plaintiff had against him; that defendant never occupied any trust relation to plaintiff, and the only relation existing between them was that of debtor and creditor, which arose

as each sum due plaintiff was collected; and that the transactions between plaintiff and defendant amounted at most to nothing more than either the loan of money or an agency to collect and pay over.   The case coming on for trial, at the conclusion of the evidence introduced by plaintiff defendant made a motion for a nonsuit, which the court overruled, and this is one of the errors assigned.   The jury returned a verdict in favor of the plaintiff. The defendant made a motion for a new trial, which being over-ruled, he excepted.   After the writ of error was sued out and before the case was called here, the plaintiff died and the admin-istrators on her estate were made parties in this court.

1. As long as a person who is in possession of the property of another, using the same for the owner's benefit, recognizes the latter's ownership, no lapse of time will bar the owner from as-serting his title as against the person in possession.   Before any lapse of time will be a bar to the owner it must appear that the person in possession has given notice, or there must be circum-stances shown which would be equivalent to notice, to the owner that the person in possession claims adversely to him.   In such a case the statute will begin to run from the date of such notice. Until the owner has such notice he has the right to treat the possession of the other person as his own.   *Keaton* v. *Green-wood,* 8 *Ga.* 97.   This is the principle at the foundation of that familiar rule now embodied in the Civil Code, § 3198, that "subsisting trusts, cognizable only in a court of equity, are not within the ordinary statutes of limitation."   Chancellor Kent in Kane *v.* Bloodgood, 7 Johns. Ch. 90, s. c. 11 Am. D. 417, states the same rule in the following language:   "The trusts intended by the courts of equity not to be reached or affected by the statute of limitations are those technical and continuing trusts which are not at all cognizable at law, but fall within the proper, peculiar, and exclusive jurisdiction of this court."   Although the rule just stated is applicable in terms alone to cases of tech-nical trusts which are cognizable only in a court of equity, the principle upon which it is founded is applicable in some cases where a technical trust had not been created; the principle being as above stated, that as long as one recognizes that property in his possession belongs to another, the latter has the right to treat

the possession as his own.   The factor in possession of funds belonging to his principal, when there is nothing in the contract or the custom of the place requiring that the funds should be paid over at any particular time, can not set up title to such funds without notice to the principal that he no longer holds the same for his benefit, and the statute of limitations does not begin to run in his favor until such notice, or there are circumstances equivalent to notice, or until there has been a demand and refusal to pay, or there has been an account rendered accompanied by an offer to settle.   In England a similar rule has been applied in the case of bailiffs and stewards who collected rents and held the same subject to the order of their principals. The rule was also applied in cases of agents having possession of the funds of the principal, when, as in the case of factors, neither under the contract nor the custom of the trade the money was to be paid over at any particular time.   In all such cases the property in the hands of the factor, bailiff, steward, or agent, as the case may be, is treated as the property of the principal, and the possession of the agent is the possession of the principal, and no right of action accrues in favor of the principal until a demand and refusal, or a notice, or what is equivalent thereto, that the agent is holding adversely; and not until the right of action accrues does the statute of limitations begin to run in favor of the agent.   This rule is in some cases subject to the exception that after the lapse of a reasonable time a demand will be presumed, and the statute of limitations will begin to run from the time such demand would be presumed to have been made.   See, in this connection, 1 Wood's Lim. (2d ed.) § 123; 2 Perry, Trusts (5th ed.), § 863; Mechem, Ag. § 533; *Oliver* v. *Hammond,* 85 *Ga.* 323, 331; *Patterson* v. *Blanchard,* 98 *Ga.* 518; 27 Am. & Eng. Enc. L. (1st ed.) 100 et seq.; *Blount* v. *Bell,* 95 *Ga.* 182.

Where one receives money from another from time to time to invest and collect the principal or interest and reinvest the same from time to time for the benefit of another, and it is contemplated by the agreement between the parties that the person receiving the money shall use the same for the benefit of the other, and there is no time specified when the money is to be returned,

such person would hold the same subject to the demand of the other, and no limitation would run against the person owning the fund in favor of the one who had collected it until there had been a demand and refusal, or there had been such a lapse of time as that the law would presume a demand and refusal, or until an account had been rendered, accompanied by an offer to settle, or the one in possession notified the owner that he no longer held it as the owner's but claimed title to it himself.   Applying this rule to the allegations of the present petition, there was no error in overruling the demurrer, so far as it raised the point that the plaintiff's cause of action was barred by the statute of limitations, and that the demand of the plaintiff had become stale.   The amendment to the petition merely amplified the allegations in the original petition, and was therefore not subject to the objection raised in the demurrer thereto, that it set forth a new and distinct cause of action.   The relation existing between plaintiff and defendant was not such that a technical, subsisting trust, cognizable only in a court of equity, would result therefrom; and for this reason the provisions of the Civil Code, §§ 3149, 3153, requiring express trusts to be declared in writing, and prohibiting the creation of such a trust in favor of a person sui juris who is laboring under no disability, have no application in the present case.   While such a trust was not created and not intended to be created between the parties, the same principles, which are at the foundation of the rule which prevents a trustee in a technical trust from pleading the statute of limitations against the claim of the cestui que trust, would prevent an agent of the character that the allegations in the petition make the defendant from relying upon the statute of limitations as a defense, until there had been an account rendered accompanied by offer to settle, a refusal upon demand to settle, an express repudiation of the agency, or such a change in the relations between the parties as would be sufficient to put the principal on notice that the agency was no longer recognized. As an instance in which this rule was applied where no express trust existed, see *Oliver* v. *Hammond,* supra.   Until one or the other of these contingencies happened, the possession of the defendant was the possession of the plaintiff, and no limitation of

time would operate to debar the latter from calling the former to account, with the single exception that if the nature of the transactions was such that, after the lapse of a reasonable time, the law would presume a demand and refusal, then the statute would begin to run from the date such demand would be presumed. If the relation which the defendant bore to the plaintiff was that of a confidential continuing agent, no such presumption would arise until such relation ceased. The evidence introduced in behalf of the plaintiff tended to establish the allegations in the petition as to the character of the agency under which the defendant managed and controlled the funds of plaintiff; and such evidence as a whole being sufficient to authorize a recovery by the plaintiff of at least a portion of the amount claimed by her, there was no error in overruling a motion for a nonsuit. Certain portions of the charge made the subject of assignments of error in the motion for a new trial were substantially in accord with what is now ruled, and were therefore not erroneous.

2. The defendant contended that if he occupied the relation of agent at all to the plaintiff, he was simply her agent to collect her money, and that in such a case the statute of limitations would begin to run in his favor certainly from the time that the principal had knowledge that the agent had made the collection. When an agent is appointed for the sole purpose of collecting and paying over money, the statute of limitations begins to run in favor of the agent from the time that the fact that the collection had been made came to the knowledge of the principal. *Schofield* v. *Woolley,* 98 *Ga.* 548. There being positive evidence introduced in behalf of the defendant that, as to some of the items with which it was sought to charge him, the sums came into his hands under authority simply to collect and pay over, it was error to refuse at his request to give an instruction to the jury embodying the principle above referred to.

3. When money is loaned and there is no agreement as to the time of repayment, the amount loaned is in law due immediately, and the statute of limitations begins to run at once in favor of the borrower. "If no time of payment is expressed in a bill or note, it becomes due immediately." 2 Rand. Com. Paper.

§ 1038.    See also Civil Code, § 3700; *Freeman* v. *Ross,* 15 *Ga.* 252.    There being evidence authorizing the jury to find that some of the money of the plaintiff which went into the hands of the defendant was the subject of a loan of the character above referred to, it was error to refuse a written request to charge, in substance, the principle above referred to; and it was also for the same reason error to charge that if "the defendant borrowed money from the plaintiff and there was no time stated for paying it back, then the statute of limitations would not begin to run against plaintiff until demand and refusal to pay, and plaintiff's right of action would not be barred until four years after such demand and refusal was made."

4. Since the passage of the uniform procedure act of 1887 (Civil Code, § 4833), a plaintiff is required only to set forth his cause of action plainly, fully, and distinctly, and in an orderly way, and it is not incumbent upon him to classify or characterize his cause of action.    If under the well-settled rules of law he has a legal cause of action, he will be given such remedies as are in law appropriate to his case and embraced within the scope of his prayer.    If under the principles of equity he is entitled to relief, he will be given such relief as his evidence may justify and his prayer may call for.    When the relief prayed does not call for the exercise of any of the extraordinary powers of a court of equity, it is apparent that under our present system there is no place for a demurrer which raises the objection that the plaintiff has an adequate remedy at law.    See in this connection *Georgia Iron Company* v. *Etowah Iron Company,* 104 *Ga.* 399; *Ray* v. *Home Company,* 106 *Ga.* 497.    If a petition is filed which prays for some extraordinary relief, such as injunction, receiver, ne exeat, and the like, and it is apparent from the facts alleged that the rights of the parties can be fully protected by the use of some recognized legal remedy, such as attachment, garnishment, claim, illegality, and the like, then the existence of such a remedy would be a sufficient reason for refusing to grant the extraordinary equitable relief and for striking on demurrer so much of the petition as prays for such relief; or, if the only relief prayed was of the extraordinary character, for sustaining a demurrer to the entire petition and dismissing the case.

See *Hitchcock* v. *Culver,* 107 *Ga.* 184; *Bush* v. *Mattox,* 110 *Ga.* 472. It follows that there was no error in overruling that ground of the demurrer which set up that the plaintiff had an adequate remedy at law, so far as the same related to that part of the petition which alleged the facts upon which the prayer for an accounting was based. While the petition prayed for an injunction in aid of the accounting, that part of the prayer does not seem to have been insisted on, and the demurrer was not directed solely to such prayer but to the entire petition.

5. The petition alleged that the plaintiff had "actually or constructively received" her interest in the estate of her deceased sister, and turned the same over to the defendant to be held, invested, and accounted for when called on. It is inferable from the allegations that the defendant, with the acquiescence of plaintiff and the other heirs, took charge of the estate of the deceased sister without administration, and that in this way the share of the plaintiff came into the hands of defendant. It is clearly alleged that when he did come into possession it was upon the terms above referred to. Under this state of facts, it does not lie in the mouth of defendant to say, in answer to the plaintiff's demand for such share, that the right of action to recover the same is in the legal representatives of the deceased sister and not in the plaintiff as heir at law. The special demurrer raising an objection to the right of plaintiff to maintain so much of her claim as was based on the share of her deceased sister's estate which had been collected by the defendant was properly overruled.

6. The petition alleged that since the plaintiff had demanded a settlement of defendant he had "offered to settle with her in land and sundry accounts or obligations he held against various parties, the same aggregating $3,268, but that plaintiff refused to accept said offer, for the reason your petitioner considered said amount inequitable and not right; all of which was an acknowledgment on the part of the defendant that he held said funds of plaintiff's in trust as aforesaid, and thereby acknowledged that he held said money, rents, and profits as a continuing and subsisting trust." This portion of the

petition was demurred to on the ground that the admissions therein referred to were made as a part of a "negotiation for compromise." Evidence offered to support these allegations was also objected to on the same ground. If the admissions or propositions alleged and proved were "made with a view to a compromise," of course the demurrer should have been sustained and the evidence rejected. Civil Code, § 5194. There is a distinction between an offer or proposition to compromise a doubtful or disputed claim, and an offer to settle upon certain terms a claim that is unquestioned. An admission made in an offer of the latter character will be admissible when one made in an offer of the former character will not. See, as bearing somewhat on the point, *Hatcher* v. *Bowen,* 74 *Ga.* 841; *Cooper* v. *Jones,* 79 *Ga.* 379; *Akers* v. *Kirke,* 91 *Ga.* 590. The petition did not directly allege that the offer of settlement was made in an effort to compromise, nor can it be inferred from the allegations that such an effort was made. So far as the allegations are concerned, it amounted to nothing more than a demand for settlement and an offer to accede to plaintiff's demand upon certain terms, thereby impliedly acknowledging the right of the plaintiff to demand a settlement at the hands of defendant. Neither the allegations nor the proof offered in support thereof were subject to the objection that they related to a proposition to compromise.

7. The petition sought to charge defendant with the rents collected from the farm during the years 1872, 1873, and 1874; the plaintiff's right to the rents as alleged being that she had inherited an interest in the farm from her father. There was a special demurrer to the allegation setting up this claim, on the ground that plaintiff's father "did not die till June, 1874," and that if defendant had collected the rents as alleged he was not liable to plaintiff but was accountable to the estate of plaintiff's father. Upon a careful examination of the petition, we can find no allegation showing when the plaintiff's father died. The demurrer was a "speaking demurrer," and was properly overruled. If plaintiff's father did not in fact die until 1874, of course she has no claim against the defendant for rents collected during her father's lifetime from a farm of which he was the sole owner.

8. A witness for the plaintiff had made a calculation showing the various amounts for which defendant was liable to plaintiff, and the paper containing this calculation was offered in evidence and admitted over the objection of defendant that the same was "hearsay and not admissible in evidence to affect or bind defendant." There was no evidence showing that the defendant had anything to do with the preparation of the paper. We know of no law authorizing the admission of such a paper as evidence.

9. The defendant relied upon two defenses, payment and the statute of limitations. The court failed entirely to call the attention of the jury to the defense of payment. Such failure was especially error in the present case, when the effect of the failure was to leave the defendant with the sole defense of the statute of limitations; and the charge on that subject was, as we have seen, not entirely free from errors that were prejudicial to the defendant.

10. The foregoing embraces a discussion of all the questions which arose in the case that are of sufficient importance to require anything like elaborate notice. There are many other questions in the record, and, as the case is to be retried, we will briefly notice such as will probably arise again. There was no error in admitting the testimony of the plaintiff to the effect that a portion of the money claimed by her was derived under a parol gift from her sister, and a certain other portion under a parol gift from her father, as against the objections that at the time of the trial the sister and the father were dead. A trustee is liable for all profits made on the trust funds in his hands; and as the defendant, under the contention of the plaintiff, occupied the relation of a quasi trustee, there was no error in admitting evidence tending to show that he had loaned the money of plaintiff at an usurious rate of interest. What the defendant's wife said to plaintiff about her presence in defendant's household being absolutely indispensable was clearly hearsay, and should not have been admitted. That defendant had no property when he married into the Sadler family, and what defendant was worth at the time of the trial were facts entirely immaterial in the determination of the issues involved in this case. One of the de-

fenses being that plaintiff's claim had been discharged in part by defendant furnishing her with board at his home, evidence as to what such board would be worth was admissible.   Declarations made by defendant as to what plaintiff and her sister who lived in defendant's family were worth were properly admitted. There was no error in refusing to allow the defendant to show what expenses he had incurred growing out of the last sickness and death of plaintiff's father.   Let the case be tried again in the light of the rulings herein set forth.

*Judgment reversed.   All the Justices concurring.*