GILLESPIE *v.* GILLESPIE *et al.*

Under the evidence in the case the court should have submitted the question of the plaintiff's right to the relief sought to the jury under proper instructions, and the grant of a nonsuit was error.

No. 1637. APRIL 14, 1920.

Equitable petition. Before Judge Tarver. Gordon superior court. August 28, 1919.

Mrs. S. A. Gillespie in the year 1918 brought her petition against W. J. and R. J. Gillespie, her sons (referred to in the testimony as Jim and Bob Gillespie), alleging that the sum of $3,000, which was her property, was invested by the defendants in a certain described tract of land; that this land was bought by her sons, and a deed conveying the property to them was executed

by the vendor; that it was understood between the petitioner and her sons that the sons could take a deed in their own names, "on the agreement that the land was to be hers, and when it was sold the money was to be hers; if the land was not sold a deed was to be made putting the title in her whenever she demanded;" that the defendants had not sold the land, had not repaid petitioner the money, and had not executed a deed to her, although she had demanded it. She does not know what arrangements defendants have made between themselves with regard to the land, but her understanding is that Jim has secured a deed from Bob to his pretended half interest in the land, and that Jim now claims title to the entire interest. Petitioner has insisted that Jim comply with his agreement to convey the land to her. He has promised to comply, but has sought to evade petitioner and put off her demand from time to time. At one time she agreed to accept a deed to 100 acres of the land on which the house is located, in order to avoid a lawsuit. Jim Gillespie has also borrowed certain money and given a deed to the property to secure the payment of the sum so borrowed, and he has conveyed 160 acres of the land to named persons. None of the vendees in these deeds were made parties to the petition. The plaintiff prays for injunction restraining the defendants from transferring, assigning, or collecting the notes given for the purchase-money of the 160 acres of land sold; that she be decreed to have title to all the land described except this 160 acres; and for specific performance of the agreement to convey.

At the trial, after submission of evidence by the plaintiff, the court granted a nonsuit. To this judgment the plaintiff excepted.

*George A. Coffee* and *Lang & Lang,* for plaintiff.

*Starr & Paschall* and *M. B. Eubanks,* for defendants.

BECK, P. J. (After stating the foregoing facts.) We are of the opinion that under all the evidence in the case the issues involved should have been submitted to the jury with proper instructions, and the jury should have decided whether or not under the pleadings and the evidence the plaintiff was entitled to a verdict for at least a part of the relief sought. One of the plaintiff's prayers was that the court decree the title to the land to be in the plaintiff, and another was for specific performance. If $3,000 of the plaintiff's money, as she contends, was used to

purchase the land in question and the other was raised by loans, and the lender was secured by a mortgage or security deed, and it was the understanding that while a deed was to be taken from the vendor conveying to the defendants, the land was to be the property of the petitioner, then a resulting trust was created and the beneficial interest in the property was in the plaintiff. Civil Code, §§ 3740, 3739; *Wilder* v. *Wilder,* 138 *Ga.* 573 (75 S. E. 654). The plaintiff herself testified at length in the case. She is nearly 80 years of age, and it is evident that her memory was not always perfectly clear as to a part of the transaction in regard to which she testified. But she does testify positively that one piece of realty, her property, was sold for a stated sum, and that $3,000 of this money was invested in the land in controversy. There is some confusion in her statements as to what was done with other sums of money arising from other sources, but her testimony is direct as to the sum of $3,000 belonging to her which was paid upon the land sought to be recovered in this action. And she attempted an explanation as to how the remainder of the purchase-money was raised by a loan, and that a security deed conveying the property in controversy was given to the lender. There were other facts testified to, corroborating her testimony.

The defendants in error contend that under the evidence, if petitioner was ever entitled to a deed conveying the property to her, or if there ever existed a resulting trust in her favor, she is now barred by laches from recovering. They point out that in her testimony in one place she says that nine years ago she demanded a deed of Jim Gillespie, and that he refused to give it; but it does not appear that he denied she had the beneficial interest in the property; and there is other language used in the testimony from which it might be inferred that subsequently to the time when Jim refused to execute the deed she had insisted in conversation with him that the property was hers; and besides, she testified positively that she had been in possession of the property all the time, and that Jim lived there with her. In the opening sentence in her testimony it is true she used the expression that her son "is in possession of some land that I am in possession of," referring to the property in controversy. But elsewhere in the testimony, although she stated that Jim Gillespie was

there on the property and his wife did part of the household work, such as cooking, etc., she said that she also did a part of the household work and the possession was hers. In view of the testimony upon this subject and the character of the testimony, it would be a question for the jury to decide, under the court's instructions, whether or not the plaintiff had been guilty of such laches as to bar her right to a recovery, if it should appear from other evidence that her money had purchased the land, as she contends. In this connection see *Teasley* v. *Bradley,* 110 *Ga.* 497 (35 S. E. 782, 78 Am. St. R. 113). The court was not authorized to decide as a matter of law either that plaintiff had not shown a resulting trust in her favor, or that she was barred from asserting her right to recover by reason of laches. Accordingly the judgment of the court granting a nonsuit is

*Reversed. All the Justices concur, except Gilbert, J., absent for providential cause.*