## WALL v. MIDDLE GEORGIA BANK.

No. 10366.  FEBRUARY 28, 1935.

*M. F. Adams* and *E. J. Summerour Jr.*, for plaintiff.

*R. C. Jenkins, D. D. Veal,* and *Dave M. Parker,* for defendant.

ATKINSON, Justice.  On October 1, 1920, Wall delivered to the Middle Georgia Bank certain securities for which he received the following:

"Deposited by J. O. Wall with The Middle Georgia Bank, Eatonton Ga., Oct. 1, 1920.

"Please put amount of each check separately.  Gold—Silver—Currency—Checks—

"For sale at market, Bond E539098 $500.00, E539097 $500.00 =$1000.00.                    [Signed] B. W. Hunt."

Hunt was president of the bank, and the transaction took place at the place of business of the bank.  The bonds were delivered to be sold and the proceeds to be applied by the bank to payment of a described promissory note.  The bonds were sold and the proceeds collected, but they were not applied on the note nor were they otherwise accounted for.  Wall assumed that they were applied to payment of the note, and did not know differently until July 26, 1926. A suit was brought on the note by Clark as transferee, on February 12, 1931, Wall having continuously since 1926 refused payment on the ground that the note had been paid as result of the bank's retention of the proceeds from sale of the bonds.  The suit resulted in a final judgment in Clark's favor on September 19, 1933, the amount of which was paid to Clark.  On February 21, 1934, Wall instituted an action against the bank, which in the meantime had become insolvent and was in process of liquidation.  The object of the suit was to enjoin transfer of another note and security executed by Wall to the bank in 1930, and have the amount of the proceeds from sale of the bonds credited on that note. The alleged basis for such relief was that such proceeds "constituted a trust fund" in Wall's favor, "and were held as such by" the bank.  The petition was

amended by adding a paragraph as follows: "Plaintiff shows . . that although it was his intention, known to the defendant, that the proceeds of the bonds hereinbefore mentioned should be applied to the payment of the certain note hereinbefore set out, the said defendant sold the said bonds without so using and applying the proceeds thereof, and converted the said proceeds to its own use, mingling the same with the general funds of the defendant. Plaintiff shows that although said defendant did not in fact credit the said proceeds to plaintiff's account, or make any other accounting to him, upon the conversion thereof the said defendant became liable to plaintiff as to a depositor, and the said fund became a general deposit upon which plaintiff was entitled to draw and check as upon other deposits. Plaintiff shows that until the termination of the litigation between himself and the said Clark he did not know whether he was entitled to claim the payment of the note held by said Clark, or whether he was entitled to claim said fund as a deposit. Plaintiff shows that he made no demand upon the said defendant for the payment of the said deposit until December 21, 1933, when he did file his claim and demand with the superintendent of banks, who then had charge of the defendant bank, and that same was refused by said superintendent."

Demurrers on the ground that the action was barred by the statute of limitations were sustained, and the plaintiff excepted.

Even if the transaction be considered as a trust arising from agency to sell the bonds and apply the proceeds, direction being given to apply such proceeds to payment of the note held by the bank, it would be the duty of the bank to pay the note and surrender the same to the plaintiff. He did not receive the note or an accounting from the bank, and it was his duty within a reasonable time to call for a report. Had he done so, it would have led to discovery of the conversion. He did not do so, but suffered the matter to rest without inquiry for six years, when he actually learned the fact of conversion. He did not then make a demand upon the bank, but delayed for more than seven years longer before making a demand or instituting an action. In these circumstances, whether the ten-year limit provided in the Code of 1910, § 4366 (Code of 1933, § 3-709), or lapse of time mentioned in the Code of 1910, § 3782 (Code of 1933, § 3-713), be applied, he would be barred. *Sutton* v. *Dye,* 60 *Ga.* 449; *Teasley* v. *Bradley,* 110 *Ga.* 497 (35 S. E.

782, 78 Am. St. R. 113). But viewed from the standpoint of no trust or fiduciary relation between the parties, how stands the case? It was held in *Munnerlyn* v. *Augusta Savings Bank*, 88 *Ga.* 333 (14 S. E. 554, 30 Am. St. R. 159), that the statute of limitations does not commence to run in favor of a bank as to a general deposit in the bank until demand and refusal, such demand not being delayed until the right has become stale. In the opinion it was said: "It appears from the declaration in this case that the deposit made was a general one, and that the bank did not issue to the depositor any certificate of deposit promising a repayment of the money, or fixing any time or terms for repayment. It simply gave to the depositor written statements to the effect that his account as agent had been credited with so much money. Under these circumstances, the bank did not become liable for a repayment of the money until after demand for it by check or otherwise, and hence the statute of limitations would not commence to run in favor of the bank until after such demand and refusal to pay. We do not mean to hold that such demand could be indefinitely delayed, for under the rule laid down in the books, this might be done for such a length of time that the right to the money would become stale." Whether the principle above stated may be applied in the instant case depends on whether the transaction amounts to a deposit of money in the bank, subject to be checked or drawn against at the pleasure of the depositor. Such was the character of the deposit involved in the case cited.

In the brief of the attorneys for the plaintiff in error it is said: "Wall's mistake in believing that this transaction operated as a payment of the note which was assigned to Clark, and upon which suit was brought, does not affect the matter; the bank was not a party to that case; and if Wall, having a deposit in the bank, claimed to have paid the note by the use of that deposit, when it had not in fact been paid, the deposit still remained, and the bank still owed him the money. The legal effect of the facts does not depend upon the construction placed upon them by the parties, or one of the parties, but upon the law; the amendment set out what was really the legal effect of the deposit slip, no matter what Wall or any one else had thought or claimed about the matter. It is not necessary to charge any deliberate fraud against Mr. Hunt or the bank. If the court will pardon the expression of a personal opinion, it is the

writer's belief, from a life long acquaintance with Mr. Hunt (who has just died), that he was utterly incapable of intentional dishonesty. But he could forget; and having received these bonds for the bank, to be sold and the proceeds placed to Wall's credit, he must have forgotten to charge up his note against the deposit when the bank received the money, and so left the deposit standing to the credit of Wall, who himself was ignorant of the fact that his deposit had not been used as he had intended, and so did not make a claim as a depositor until after a jury had found the fact to be that his note had not been paid. His petition sets forth in much detail the history of the transaction, but at the end he is still a depositor, and owns a general deposit. . . The fact that the bank may not have actually opened an account with Wall as a depositor, but mingled his money with its funds without having given any one credit for it, does not affect the duty of the bank to have opened such an account, and in law the duty implies the fact. No failure of a bank which has received a deposit to make proper entry on its books can affect the depositor or destroy his title to his deposit. The bank accepted the bonds for sale and deposit; it now has either the bonds or the money; it has never paid Wall, nor any one for him; and he did not, by check or otherwise, demand his deposit until 1933. His action is not barred, and if he can prove his allegations he is entitled to the relief which he seeks." The theory of the plaintiff, as alleged in his petition and as here outlined, does not show that the transaction amounted to a deposit of the character involved in the *Munnerlyn* case, supra. The ruling there made is not authority for the proposition in the instant case that the statute of limitations did not begin to run until the plaintiff demanded the money in 1933. The allegations charged commission of a wrong which partakes of the nature of a contract and also of a tort. In the Code of 1910, § 4407 (Code of 1933, § 105-105), it is declared: "When a transaction partakes of the nature both of a tort and a contract, the party complainant may waive the one and rely solely upon the other." He did not know of the breach of the contract until 1926. Whether or not proper diligence would have required him to ascertain the facts before that time, having ascertained the breach it was his duty then to move. Whatever may be his election, the statute of limitations ran against him from the date of his discovery of the wrong. On the theory of a contract his action would be

barred in four years. Code of 1910, §§ 4362, 4368 (Code of 1933, §§ 3-706, 3-711). On the theory of a tort it would be barred in four years. § 4496 (1933, § 3-1002). It is a most unfortunate case for the plaintiff, but in the eyes of the law it is not different from other unfortunate cases where parties lose by failure to act to enforce their rights within the limits of time provided by statute. The judge did not err in sustaining the demurrer and dismissing the action.

*Judgment affirmed. All the Justices concur except Hutcheson, J., who dissents.*