## 1084.  COCHRELL *v.* LANGLEY MANUFACTURING CO.

1. The doctrine expressed in the maxim res ipsa loquitur is simply a rule of circumstantial evidence. In this State the philosophy of the doctrine is embraced in, and its practical application authorized by, section 5157 of the Civil Code: "In arriving at a verdict the jury, from facts proven, and sometimes from the absence of counter-evidence, may infer the existence of other facts reasonably and logically consequent on those proved."

(a) Under the facts proved in this case, the jury would have been authorized to infer the existence of some one or more of the specific acts of negligence alleged in the petition; consequently the nonsuit was improperly awarded.

2. Whether an employee has knowledge of defects in the machinery with which he is required to work, and which caused his injury, and whether such knowledge amounts to contributory negligence, are generally questions to be determined by the jury. In this case the evidence of contributory negligence is not conclusive.

3. A servant is under no duty to observe changes resulting from the gradual wear and tear of machinery, until they become obvious to any careful man. A master's duty is to find out such changes by constant inspection, and to repair them, and to warn the servant of their existence.

4. Where one of the questions to be determined was the cause of the sudden, automatic starting of machinery of a certain kind, the opinion of a witness familiar with the construction and operation of similar ma-

chinery, describing a condition of the machinery which would be likely to cause such sudden movement, would be admissible testimony.

Action for damages, from city court of Richmond county— Judge Eve.   January 13, 1908.

Argued May 6,—Decided December 22, 1908.

Cochrell sued the Langley Manufacturing Company, to recover damages for injuries received by him while in its employ.  The trial court excluded certain testimony offered by the plaintiff, and, at the conclusion of plaintiff's evidence, granted a nonsuit.  The writ of error challenges the correctness of the ruling excluding the testimony, and the judgment of nonsuit.  The petition alleges the following facts:  On March 26, 1907, plaintiff was working for the defendant corporation as a card-grinder, and, while so engaged in his work, it became necessary for him to repair a carding machine; and for this purpose he brought the machine to a full stop, by shifting from the tight pulley to the loose pulley the belt which transmitted power.  While the machine was stationary, he put his hands inside, to ascertain the trouble with the carding apparatus, and, while he was so engaged, the machine suddenly and without previous warning started, and, before he could withdraw his hands, his left hand was caught in the machine and mashed to such an extent as to necessitate the amputation of his left arm between the wrist and the elbow.  He alleges that it was usual and customary to work on the carding machines while the belt was on the loose pulley, as the belt would continue to run on the loose pulley unless the machine was in a defective condition.  He further alleges that the sudden starting of the machinery was not caused by his act or that of any coservant, but was due solely to the following defective condition of the machine:  (*a*)  The belting had become stretched on one side, and, as is customary in such cases, had a tendency to creep, and actually did creep towards the tight side.  (*b*)  The pulleys on the carding machine were not set true to the pulley upon the power shaft.  (*c*)  The pulley upon the power shaft was not set true towards the pulleys upon the machine.  (*d*)  There was no guard upon the belt, to prevent it from creeping from the loose pulley on to the tight pulley.  If the machine had been in proper condition and not defective in the particulars enumerated, the belt would have run on the loose pulley indefinitely, and the machine would never have started as it

did.   Plaintiff had no concern with the belting, pulley, or shafting, and was not warned of the defective condition in which they were, and assumed, as he had a right to do, that they were in good condition, and that the belt would not creep, but would stay where it was put, and, but for these defects, he could have performed his work in perfect safety with the belt running on the loose pulley.   Defendant did know of the defects, and should have known of them, but failed to give plaintiff any warning.

The plaintiff, in support of the allegations of his petition, testified as follows:  "I was a card-grinder and they had a card tore up. . . By 'tore up' I mean it got a stripping run through it, and tore up the cloth, which is inside the casing.  This has nothing to do with the belts and pulleys. . . I stopped it by shifting the belt off the tight pulley myself.  Then I taken my hand and was pushing the cylinder around, to come to the jammed-up place, to scratch it up.  While I was doing that, it started up in some way and snatched my hand in and ground it to pieces. . . At the time I went in there I was not working on the belts, pulleys, or shafting.  It was not my duty to look after that, unless it was reported to me that something was out of fix by one of the operatives, and that was not reported to me at all. . . The loose pulley is on there to stop the machine without throwing the belt clean off.  When you want to stop the machine, you don't take the belt all the way off; you just shift it onto the loose pulley.  The conduct of the belt, if it is put on the loose pulley of a machine in good condition, is that it will stay there.  I know this because I have put many a one on there and it has stayed.  I and other people have worked on the inside of cards with the belt running on the loose pulley.  That is the regular way to do it. . . Nobody had reported anything wrong with the belt or pulleys. . . As far as I knew, it was all right. . . Nobody was near me when this happened. . . Those cards had been there ever since the mill had been running, I suppose.  They were there when I went in there. . . There was no shifter on this pulley. When hurt I was at the other end of the machine from the belt, pushing the cylinder around. . . I was not an inspector of these machines.  Nobody had called my attention to the fact that this machine was out of repair.  I am an ignorant man—can not spell my own name."

The plaintiff was not permitted to prove by an expert witness the usual conduct of a carding machine when in good condition, and what ordinarily causes a belt to travel from the loose pulley to the tight pulley; and was not permitted to testify in his own behalf that he had worked with these cards and other cards, and knew what would cause the belt to go from the loose pulley on to the tight pulley, or what would cause the belt to shift from one pulley to the other; or to give testimony of a similar character, showing the operation of this machinery when in a good condition and when in a defective condition, and the operation of similar machines under similar conditions.

*A. L. Franklin, Austin Branch,* for plaintiff.

*William H. Barrett,* for defendant.

HILL, C. J. (After stating the foregoing facts.)

1. The main question arises on the grant of a nonsuit. Does the evidence for the plaintiff, most favorably considered, show any evidential facts, or inference reasonably deducible from evidential facts, tending in any appreciable degree to establish his right to recover? If so, there is "proof to support the plaintiff's allegations," and a nonsuit is erroneous. *Corcoran* v. *Merchants and Miners Transportation Co.,* 1 *Ga. App.* 743 (57 S. E. 962); *Vickers* v. *Atlanta & W. P. R. Co.,* 64 *Ga.* 307. It is an elementary principle of law that the duty of inspection is one of the absolute duties of the master. The law commands the master to inspect, and to continue to inspect, dangerous machinery, in order that he may discover any defects in construction, or such as are likely to be caused by wear and tear of operation, and, when discovered, to promptly remedy them, or give timely warning of the consequent danger to his servant. The duty of inspection is affirmative, and must be continuously fulfilled and positively performed. *Southern States Cement Co.* v. *Helms,* 2 *Ga. App.* 308 (58 S. E. 524); Buzzell *v.* Laconia M. Co., 48 Me. 113 (77 Am. Dec. 212). "It is the duty of a proprietor of a mill to inspect . . the machinery and appliances under his control, . . to anticipate and provide for the wear and tear of belts and pulleys, to test them at regular intervals and to ascertain whether they are running true or not, . . and, in the case of pulleys, fast or loose, to observe whether they are in good order and fit to be relied upon to perform their work properly and without unnecessary danger

to servants." Petrarca v. Quidnick Mfg. Co., 27 R. I. 265 (61 Atl. 648).

In the light of these legal propositions, let us briefly consider the facts of this case. The plaintiff testified, that after he had stopped the machine in the usual and customary way, by shifting the belt from the tight to the loose pulley, and that when he was in the act of doing his work on the carding machine, the machine suddenly started; that neither himself nor any coservant did anything to start the machine; that if the machine had been in good condition, it would not have started, without some human agency, with the belt on the loose pulley; and that, with a machine in good condition, the belt, when placed on the loose pulley, would stay there until replaced on the tight pulley; that the machine was started by the automatic creeping of the belt from the loose pulley on to the tight pulley, and that this automatic creeping of the belt was due to a certain defective condition of the machinery; and that he had no knowledge of such defective condition, and was not charged with the duty of finding it out. Could the defective condition of the machinery described by the plaintiff, and which he says caused his injury, have been discerned by reasonable inspection? If so, the law imposing the duty of inspection upon the master charges him with knowledge of such defective condition. Southern Cotton-Oil Co. v. Gladman, 1 Ga. App. 262 (58 S. E. 249). In connection with the evidence of the plaintiff on this vital issue of negligence relating to the defective condition of the machinery, an admission of the defendant corporation in its answer is not entirely without probative value. The defendant admitted that "said machine would run on the loose pulley indefinitely, unless some unforeseen agency or condition should cause it to change." The "unforeseen agency" in the present case, according to the evidence of the plaintiff (which was admitted to be the truth, on the motion to nonsuit), was not the agency of himself or of a fellow servant. The only agency, therefore, that could have caused the change was the condition of the machinery itself. But the master is under a legal duty to foresee any and every defective condition of his machinery that can be ascertained by ordinary diligence, and to provide against any injury to his servant from such defective condition. He can not escape liability by saying the thing complained of happened, or was caused by "some

unforeseen agency or condition." The full measure of his duty is not reached by the statement that the trouble which caused an injury was "unforeseen." It must have been "unforeseeable" by the exercise of all due diligence on his part to discover and to avoid hurtful consequences.

The doctrine of res ipsa loquitur is invoked as applicable to the facts of this case, and the learned attorney for the plaintiff in error presents a very able and interesting argument in favor of his contention. We do not think it necessary to enter into a discussion of this doctrine. The maxim has been a prolific inspiration to much useless and wasted juridic erudition. Practically, as we said in the *Monahan* case, 4 *Ga. App.* 680 (62 S. E. 127), the doctrine is simply a rule of circumstantial evidence, which permits an inference to be drawn from proved facts. It furnishes a working basis for reasonable hypothetical conjecture, and gives scope for legitimate reasoning by the jury. The philosophy of the doctrine is stated in section 5157 of the Civil Code. "In arriving at a verdict, the jury, from facts proven, and sometimes from the absence of counter-evidence, may infer the existence of other facts reasonably and logically consequent on those proved." Under the guidance of the law as comprehensively stated in this section of the code, we think a prima facie case of negligence in respect to the matters alleged was made out by the plaintiff, and that the ultimate question was one of fact for the jury. In a case identical on the facts with the one now under consideration, the Supreme Court of Rhode Island, in a well considered and clearly reasoned decision, deduces conclusions of law so sound and so apt that we are led to quote them with approval. "In an action for injuries to a servant, caused by his arms being drawn into a carding machine which he was cleaning, the burden of proof imposed upon the plaintiff to show that the injury was caused by defendant's negligence, while he himself was in the exercise of due care, was sustained by evidence that the machine started automatically without fault on the servant's part." "The automatic creeping of a driving belt on a carding machine from one pulley to another, so as to start the machine, affords sufficient evidence that the machine is out of order, and that the master has been negligent in failing to inspect the same, to authorize a recovery in favor of a servant

injured by the starting of the machine without fault on his part."
Petrarca v. Quidnick Mfg. Co., supra.

2. Another ground of negligence relied upon by plaintiff is
that there was no guard on the belt to prevent it from creeping;
and it is insisted that if there had been a belt guard, it would
have prevented the defective condition of the belts and pulleys from
causing the accident. The absence of a belt guard was not dis-
puted. Whether the master, in the exercise of due care, should
have had one on the belt to prevent injury to his servant was
purely a question of fact. And it is equally clear that whether it
was contributory negligence of the servant to work, with knowledge
that there was no belt guard, was a question for the jury. To de-
termine these questions, others would have to be considered. Was
it usual and customary to have belt guards on similar machinery?
Did the absence of a belt guard indicate that the machine was in
a good or a defective condition? Would a belt guard have pre-
vented the injury? None of these issues could be determined as
matter of law. "Whether an employee is guilty of contributory
negligence because he remains in the service of his employer after
he has knowledge of defects in the machinery with which he is
required to work is a question for the jury." Farley v. Charleston
Basket Co., 50 S. C. 222 (28 S. E. 193). Knowledge of defects,
on the part of the servant, is not conclusive of negligence. It
must depend upon the facts of the particular case. Labatt on
Master and Servant, §§ 322, 323, 439; Roach v. Haile Gold Mining
Co., 71 S. C. 79 (50 S. E. 543). In the Farley case, supra, it was
distinctly held not to be contributory negligence as matter of law
for the servant to operate a machine upon which there was no
guard. The question was for the jury.

3. It is insisted by the defendant that the plaintiff not only
had equal opportunity with the defendant of knowing of the de-
fects, if they existed, but he was the very person through whom
the defendant performed the duties required of it under the law,
of inspecting its machinery and keeping it in proper shape. If
these facts are affirmatively shown by the testimony, then the plain-
tiff would have no right to recover damages, even if there was
evidence of negligence on the part of the defendant. On this
point the plaintiff testified that he did not know of the defective
condition of the belt or pulleys, and had no opportunity of dis-

covering their condition, as his sole duty pertained to the card-grinding. Whether the plaintiff had the same opportunity as the defendant, of knowing of the defects alleged and proved, would depend upon the character of such defects,—whether they were latent or patent. Where the defect is superficially discernible or plainly apparent to the eye, the servant has the same opportunity of seeing it and knowing of it as the master. But if the defect is latent, the master would be held bound to discover the fact sooner than the servant, because the duty of inspection rests on the master, and not on the servant. In a case of latent defects,—those which are only discoverable by proper inspection,—the master is necessarily held to a higher standard of conduct than the servant, since the master owes to the servant the duty of inspection. *Hubbard* v. *Macon Ry. & Light Co.,* ante, 223 (62 S. E. 1018); *Cedartown Cotton Co.* v. *Miles,* 2 *Ga. App.* 83 (58 S. E. 289); Union Pac. Ry. Co. *v.* Jarvi, 3 C. C. A. 433 (53 Fed. 65). In the strong and terse language of the attorney for the plaintiff in error, "the master's duty of knowing the danger is antecedent, and the servant's subsequent. The master must anticipate danger and prevent it before it arises; the servant need only observe and avoid it after it has come. The master is the sentinel, the servant only a guard. The master says to the servant, 'You are to work, I will watch.' The servant replies, 'My eyes are intent upon your work; when danger draws nigh, warn me that I may escape.'" Therefore, if the plaintiff in error was under no duty to inspect the belts and pulleys, he can not be held impliedly to have known of their defective condition and to have assumed the risk. It is true the plaintiff testified that it was his duty to repair any part of the machinery when he found it out of repair, or when it was reported to him as being out of repair, if he was able to do so. But the duty of repair, under these circumstances, does not embrace the duty of inspection. *Green* v. *Babcock Lumber Co.,* 130 *Ga.* 469 (60 S. E. 1042); *Hubbard* v. *Macon Ry. & Light Co.,* supra. The plaintiff, according to his testimony, was only called upon to repair apparent defects and those which were reported to him. It would still be the defendant's duty to warn him of any hidden or latent dangers in some parts of the machinery separate from those which he was called upon to repair. We do not think, therefore, that it can be held in this case, as matter of law, under the

evidence, that the plaintiff assumed the danger arising from defective belts or pulleys, if such defects were found by the jury to have been latent. Martineau *v.* Nat. Blank Book Co., 166 Mass. 4 (43 N. E. 515).

4. The testimony set out in the two special assignments of error, and which was excluded by the court, we think should have been admitted. A portion of this testimony, it seems to us, falls clearly within the classification of expert testimony. One of the main questions in the case was as to the cause of the sudden and unexpected starting of the machine after the belt had been taken off the tight pulley and put onto the loose pulley. Plaintiff testified that the sudden movement of the machine was not caused by himself or any coservant. What would cause machinery of this character to start automatically? Certainly one not familiar with machinery of like kind could have no reliable opinion on the subject. It was a question to be elucidated by the testimony of one familiar with the movement of machinery of a similar character under similar conditions. For this reason, we think the testimony was clearly admissible. Civil Code, §5287; 1 Wig. Ev. §451, on page 542, and cases in the notes. The objection to a consideration of these exceptions, on the ground that it does not appear that it was made known to the court below what would have been the answers to the questions propounded, we think is only well taken as applicable to a small portion of the testimony offered; as to a large portion of the testimony offered the exceptions are sufficiently specific. We, therefore, hold that the court erred in excluding the testimony as set out in these two exceptions, and also erred in granting the nonsuit. *Judgment reversed.*