## 31871. FUSSELL *v.* ATLANTIC COAST LINE RAILROAD COMPANY.

DECIDED JUNE 11, 1948.

*D. E. Griffin*, for plaintiff.

*Matthews, Long & Moore, Jay & Garden*, for defendant.

MacIntyre, P. J. The question arising on the grant of a non-suit and the exception thereto is: "Does the evidence for the

plaintiff, most favorably considered, show any evidential facts, or inference reasonably deducible from evidential facts, tending in any appreciable degree to establish his right to recover? If so, there is 'proof to support the plaintiff's allegations,' and a nonsuit is erroneous. *Corcoran* v. *Merchants and Miners Transportation Co.,* 1 *Ga. App.* 743 (57 S. E. 962); *Vickers* v. *Atlanta & W. P. R. Co.,* 64 *Ga.* 307." *Cochrell* v. *Langley Mfg. Co.,* 5 *Ga. App.* 317, 320 (supra). In determining whether there is proof to support the plaintiff's allegations "a jury in arriving at a conclusion upon disputed issues of fact may believe a part of the testimony of a witness or witnesses, and reject another part thereof, it being their duty to ascertain the truth of the case from the opinion they entertain of all the evidence submitted for their consideration" (*Reaves* v. *Columbus Elec. &c. Co.,* 32 *Ga. App.* 140 (4), 122 S. E. 824, citing *Sappington* v. *Bell,* 115 *Ga.* 856 (1), 42 S. E. 233); or, in short, "the jury [are] the sole judges of the facts, and it [is] their privilege to draw their conclusions from the entire evidence, or from any part of it" (*Sutton* v. *State,* 123 *Ga.* 125, 127, 51 S. E. 316). If then, taking the evidence most favorable to the plaintiff, there are any facts, or any inferences reasonably deducible from evidential facts, tending in any appreciable degree to establish his right to recover, the evidence is sufficient for the submission of his case to the jury, and a nonsuit is erroneously granted.

In the light of these legal propositions, let us briefly consider the facts of this case. The testimony of the witness Barrett showed in part that the right-of-way of the railroad company at the place here in question was covered with high, thick, dead grass which "went clear across the rails"; that "where this fire was there was not an embankment on either side worth anything"; and that he stated: "I noticed the train exhausting through the smoke-stack, steam and puffing. It was going pretty good. . . . It was a little up hill." This same witness, who was near the scene of the fire because he happened to have a flat tire on the road about 100 yards from the house in question from where he first saw the fire, testified that he saw no one in or around the house before the fire and that, when he observed the fire, he went to the house and observed no one in or around it at this time either. Other testimony was introduced to the effect that no

one lived in the house and that it was filled with hay at the time of the fire. Barrett also said that he saw the train in question go past in front of the house; that he saw the house before he saw the fire; and that it was about thirty minutes after the train passed before he discovered the fire in question.

On direct examination Barrett testified: "When I noticed the fire I looked up and it was blazing *up at* [which he explained later, when the case was reopened and he was again put upon the stand, to mean "right up close to"] the house. I walked part of the way up there [to the house] and I noticed the grass this way [meaning the grass in the direction of the railroad track from which he was coming] and it had caught and the fire was going up the side of the house. The fire was going . . west up the track. . . . The train was running west."

On cross-examination, he testified: "I had been working on the tire just a little while when the train passed. When I saw the fire the house was on fire." If this appeared to contradict, or did contradict, the witness's testimony on his direct examination, the jury could believe the testimony on direct, or, vice versa, the testimony on the cross; however, after the case was reopened and the witness again went on the stand, he explained this, we think, with the following words: "In other words, after the train passed and I noticed it. When I glanced up, the fire was burning right up close to the house, and before I got there [to the house] it had blazed up and caught the house and was burning it. It caught the house on the west side. The same direction in which the train was running. When I got up there I found that the fire had burned from [about 70 to 75 feet] back that way [from the direction of the railroad track] and burned down on to the house and by the front porch of the house." On his further cross-examination, he testified in part: "I don't know how long the house was burning when I saw it. I saw it thirty minutes after the train passed. About that when I noticed the fire. I don't know which way the wind was blowing that day. I don't remember whether it was windy. It was a clear day. I don't think I noticed any sparks coming out of the train. I didn't notice any ashes or coal. I didn't notice that I could see any sparks."

"Since the train passed in the daytime, when sparks would

not as a matter of common knowledge be generally visible" (*Jarrell* v. *Seaboard Air-Line Ry.*, 21 *Ga. App.* 415, 416 (2a), 94 S. E. 648), this last testimony on the witness's cross-examination cannot be said to demand a finding that the fire was not caused by flying sparks from the engine of the defendant, nor does it preclude a finding that the fire was caused by the locomotive in some other manner than by flying sparks. "To authorize a plaintiff to recover damages from a railroad company for the destruction of property by fire caused by the running of its locomotive, it must appear that such damage was occasioned by the fault or negligence of the company or its agents. If, without more, it should be shown that the fire was occasioned by operation of the locomotive, negligence on the part of the company would be presumed." *Gainesville &c R. Co.* v. *Edmondson*, 101 *Ga.* 747 (1) (29 S. E. 213).

Since here a nonsuit was granted and no evidence was introduced by the defendant (nor was any elicited from the witnesses of the plaintiff) to show that the engine was in good order, was equipped with spark arresters in good condition, and was prudently handled, the various circumstances in proof, in the absence of any such testimony, were sufficient to require a submission to the jury of the issue whether the fire which destroyed the plaintiff's property was caused by the negligence of the defendant company. *Jarrell* v. *Seaboard Air-Line Ry.*, supra (3), and cit. See also *Atlantic Coast Line R. Co.* v. *Davis*, 5 *Ga. App.* 214, 217 (2) (62 S. E. 1022); *Port Royal &c. Ry. Co.* v. *Griffin*, 86 *Ga.* 172 (12 S. E. 303); *Talmadge* v. *Central of Ga. Ry. Co.*, 125 *Ga.* 400 (54 S. E. 128); *Southern Ry. Co.* v. *Herrington*, 128 *Ga.* 438 (57 S. E. 694); *Greene* v. *Central of Ga. Ry. Co.*, 130 *Ga.* 375 (60 S. E. 861); *Atlantic Coast Line R. Co.* v. *McRee*, 11 *Ga. App.* 790 (76 S. E. 152); *Louisville & Nashville R. Co.* v. *Studdard*, 34 *Ga. App.* 570 (130 S. E. 532).

The rule, relied upon by the defendant, that "an inference resting only upon an inference is not permissible" is not applicable to the facts of the instant case. See authorities cited in the preceding paragraph. The defendant also states that there are innumerable theories in which one might indulge in speculating upon the origin of the fire and lists five or six such theories, citing among other cases *Georgia Ry. & Elec. Co.* v. *Harris*, 1 *Ga.*

*App.* 714 (1) (57 S. E. 1076) where it is said: "Where a plaintiff in a civil case supports his action solely by circumstantial evidence, before he is authorized to have a verdict in his favor the testimony must be such as to reasonably establish the theory relied upon, and to preponderate to that theory, rather than to any other reasonable hypothesis." The term *hypothesis* as there used refers to such reasonable inferences as are ordinarily drawn by ordinary men in the light of their experience in everyday life. *White* v. *State,* 18 *Ga. App.* 214, 215 (89 S. E. 175). Here the theories suggested by the defendant do not attain the status of being such a "reasonable hypothesis" as to the manner in which the house was set afire, for there was no evidence in the record to support any of them. Here the evidence, having supported and established the theory that the locomotive or train of the railroad company was the origin of the fire, necessarily preponderated in support of this theory, rather than to those which were unsupported by the evidence.

We do not hold that the plaintiff ought, or ought not, to recover; but we merely hold that he ought not to have been nonsuited and that the trial judge erred in awarding a nonsuit.

*Judgment reversed. Gardner and Townsend, JJ., concur.*