## 38224. CADRANEL *v.* WILDWOOD CONSTRUCTION COMPANY.

FRANKUM, Judge. 1. "Regardless of whether a petition sets out a cause of action, if the plaintiff proves every fact charged, without at the same time disproving his right to recover by establishing the existence of other undisputed facts which show that he is not entitled to a verdict, it is not proper to award a nonsuit." *Clark* v. *Bandy,* 196 *Ga.* 546 (27 S. E. 2d 17).

2. The fact that there is a conflict in the testimony of the plaintiff and of certain of his witnesses is not a good ground for a nonsuit, if there is sufficient evidence in favor of the plaintiff to present an issue of fact for the jury. *Smith* v. *City of Rome,* 16 *Ga. App.* 96 (3) (84 S. E. 734). On a motion for nonsuit the evidence and all legitimate inferences therefrom should be construed in favor of upholding the action. *Caldwell* v. *Knight,* 92 *Ga. App.* 747 (2a) (89 S. E. 2d 900).

3. "The broker's commissions are earned when, during the agency, he finds a purchaser ready, able, and willing to buy, and who actually offers to buy on the terms stipulated by the owner." Code § 4-213. The owner, or another broker, even though there is no exclusive agency provision in the agreement, cannot, with knowledge of negotiations between a prospect and another broker, interfere and by closing the sale defeat the right of the first agent to his commissions. *Vaughn* v. *Clements,* 65 *Ga. App.* 823 (1) (16 S. E. 2d 607). But if the first broker has been unable to sell the prospective purchaser, and thereafter negotiations between the two have been entirely broken off, then the owner, or another broker, may thereafter sell without incurring liability to the first agent, even though the sale be made to the initial prospect. *Landrum* v. *Lipscomb-Ellis Co.,* 62 *Ga. App.* 649 (2) (9 S. E. 2d 205).

4. The testimony of the plaintiff in this action for recovery of real-estate commissions against the seller of property was that the plaintiff had, until December, 1958, been a partner in the A. & S. Realty Company; that upon the dissolution of this partnership "open listings," being those listings not exclusive in character, were fair game for anyone; that the listing on the defendant's property at a price of $47,000 was an

oral listing and was not exclusive; that after leaving the company the plaintiff called the president of the defendant corporation and was told that he might have a listing on the property; that he was approached by the purchaser, Alembik; that he obtained Alembik's signature on a sales contract at the price of $47,000 and presented it to the defendant, and was then told that "he could not sell it to that man because there was a difference in commission, that I would have to split my commission with A. & S. Realty and Sam Draylor;" that the plaintiff knew Draylor had previously showed Alembik the property in question but had been told by Alembik that these negotiations were at an end and that he had "fired" Draylor. This sales contract, which was introduced in evidence, was dated January 19, 1959. It was never signed by the defendant. On February 15, 1959, the defendant executed a deed to the property to Alembik and his wife in the principal sum of $47,000. Demand for payment of commission to the plaintiff was refused.

The defendant's president on cross-examination testified that he gave A. & S. Realty Co. an oral exclusive listing on the property. Alembik testified that he had made it clear to the plaintiff from the beginning that he would not purchase the property without Draylor being included in the negotiations. He also testified, however, that after Draylor priced the property to him at $49,000 he told him he would not pay that; that Draylor did not give him a break-down on the property which he had requested, and that he then called the A. & S. Realty Company because he saw its telephone number on a sign posted on the property, and he was then referred to the plaintiff. There are indications in the record that the sale was in fact closed by Draylor and A. & S. Realty Company acting in concert. Alembik's testimony, however, is also to the effect that he never made Draylor any offer to purchase the property prior to signing the sales contract presented to him by the plaintiff, that the plaintiff negotiated the contract which he signed, and that the defendant refused to accept it.

Accordingly, following the rules of law set out above, and construing the evidence in favor of the plaintiff (*Fussell* v. *Atlantic Coast Line R. Co.*, 77 *Ga. App.* 302, 48 S. E. 2d 556), a jury, or a trial judge sitting without intervention of a jury, would be authorized to accept the plaintiff's version of the transaction. Though there be conflict between the plaintiff's

testimony and that of one of his witnesses, it cannot be said that there was no evidence to sustain the plaintiff's petition. *Ricketts* v. *Henry*, 141 *Ga.* 406 (81 S. E. 197); *Smith* v. *City of Rome*, 16 *Ga. App.* 96, supra. See *McCurry* v. *Moffett*, 80 *Ga. App.* 761 (57 S. E. 2d 451). The trial judge in ruling upon a motion for a nonsuit does not weigh the evidence, but only determines if there is any evidence to support the allegations of the petition.

The plaintiff introduced evidence to substantiate each allegation of his petition. In believing the plaintiff's testimony a jury, or a trial judge sitting without intervention of a jury, would be authorized to find that the plaintiff did, in fact, procure a purchaser ready, willing and able to buy and who actually offered to buy on the terms stipulated by the owner, and, also that the defendant's previous negotiations with another real-estate broker had terminated. There was sufficient evidence in favor of the plaintiff to prove his petition as alleged, and it was accordingly error for the trial judge to grant a nonsuit.

*Judgment reversed. Gardner, P. J., Townsend and Carlisle, JJ., concur.*

DECIDED APRIL 28, 1960—REHEARING DENIED MAY 11, 1960.

*Lipshutz, Macey, Zusmann & Sikes, John M. Sikes, Jr.,* for plaintiff in error.

*Parks & Eisenberg, David S. Eisenberg,* contra.