## 58148. CAMPBELL v. MUTUAL SERVICE CORPORATION.

DEEN, Chief Judge.

M. Porter Campbell brings this appeal from a jury verdict which awarded appellee $13,700 as recovery of a broker's commission for the sale of real estate.

1. Appellant first contends that the trial court erred in denying his motion for summary judgment.

"'After verdict and judgment, it is too late to review a judgment denying a summary judgment, for that judgment becomes moot when the court reviews the evidence upon the trial of the case.' *Phillips v. Abel,* 141 Ga. App. 291 (1) (233 SE2d 384) (1977)." *Talmadge v. Talmadge,* 241 Ga. 609 (247 SE2d 61) (1978). This enumeration is therefore without merit.

2. Appellant next contends that the trial court erred in allowing into evidence the following testimony which he elicited from the plaintiff's president on cross examination: "Q. Isn't it true the day that you and Mr. Campbell left the council meeting and you had that conversation in the car where he told you that you had just a few days left on the option, that your comment to Mr. Campbell was 'Well, if you ever sell that property to the city, I'm gonna sue hell out of you'? A. Oh, gosh, no. Q. That's not true. A. It is absolutely not true. Q. You sued him, didn't you? A. Yes. But I didn't anticipate this. I had no thought of suit until — when Mr. Campbell submitted a contract, and I learned about it, I called Mr. Campbell at his home. And I said, 'Porter, I understand you submitted a contract to the city' or 'signed a contract with the city.' And he said 'yes.' I said, 'Well, how do I stand?' He said, 'Well, I'm gonna do what's right.' And I said, 'Well, I appreciate it, but what do you mean by "what's right?"'" He said, 'I'm gonna give you — I thought I'd give you $5,000.' I said, '$5,000 on a commission that's considered — well, that's not even four percent.' I said, 'I just don't feel like that's quite adequate.' And he said, 'Well, really —.'" At this point defense counsel objected to the testimony as offer of a compromise.

On appeal, appellant argues that the testimony was not responsive to the question and that the trial court

erred in not sustaining his objection to it as an offer of compromise. Appellant's argument that the testimony was not responsive may not be raised for the first time in this court where no such objection was made in the court below. *Tyler v. State,* 147 Ga. App. 394 (249 SE2d 109) (1978).

While Code Ann. § 38-408 provides that admissions or propositions made with a view to compromise are not admissible in evidence, we believe that the issue in the present case is parallel to that raised in *Williams v. Smith,* 71 Ga. App. 632, 642 (31 SE2d 873) (1944). In that case, counsel for the plaintiff asked the witness: " 'You asked Mr. Henderson to see Mr. Smith and that you would give Mr. Smith $100 to cancel the option, didn't you?' " In ruling that the answer to this question was not an inadmissible offer to compromise, the court held "[u]nder the facts here the offer on the part of the defendant to settle for $100 was an offer to settle and not a proposition to compromise. It is controlled by the principles laid down in *Teasley v. Bradley,* 110 Ga. 497 (6) (35 SE 782, 78 ASR 113), as follows: " 'An admission of liability contained in an offer to settle, brought about by a simple demand for settlement, is not inadmissible on the ground that such admission was "made with a view to compromise," when there is nothing whatever to indicate that there has been any effort to compromise, and when it can not be inferred from the circumstances under which the offer was made that there has been such an effort.' " As in *Williams,* the plaintiff in the present case simply made a demand under the terms of his contract and there was a counter-offer which was not in the nature of a proposition made with a view to compromise. The testimony does not indicate any effort of the parties to reach a settlement. See also *Hening & Hagedorn v. Glanton,* 27 Ga. App. 339 (2) (108 SE 256) (1921).

3. Appellant urges error in the trial court's ruling to direct a verdict against defendant on his counterclaim which alleged that after the option expired he informed Ramsey to cease all negotiations with the city, that Ramsey had upset the city by his unprofessional behavior, and that the broker "without authority, approval or ratification did wilfully and intentionally submit to the

City of Marietta a sales contract for $10,500 per acre signed by Ramsey." He further alleged that the city had had the property appraised at $14,400 per acre, and that the city probably would have paid that amount but for the fact they had received an unauthorized sales agreement presented by Ramsey for $10,500 per acre, and as a result of Ramsey's actions he sustained a loss of $3,400 per acre for a total loss of $37,400.

The trial court held that there was a failure of proof of defendant's allegations. We have examined the transcript and find that there was no evidence that Ramsey submitted an unauthorized offer to the city; the evidence showed that the city council had voted to offer Campbell $8,500 per acre for his property because they had purchased adjacent land for that amount. Campbell refused the offer and made a counter-offer to split the difference between the $8,500 offer and his original asking price. After a price of $10,500 was approved by the council, the mayor asked Ramsey to draw up an offer for that amount and submit it to Campbell. The evidence shows that a sales contract was drawn up with $10,500 per acre offered for the property with Ramsey's signature shown in his capacity as a broker. All the evidence showed that the contract was understood by the city officials to be an offer to Campbell and not an offer submitted to the city on Campbell's behalf by Ramsey.

The defendant also failed to prove that the city would have paid more for the land had plaintiff not reduced the city's offer to contract form. The city officials testified that the purchase of adjacent property for $8,500 per acre made it impossible for the city to pay Campbell's asking price or the appraised price. Campbell, himself, offered to sell the land for $11,700 per acre before the city's offer was reduced to writing when he offered to "split the difference." He admitted that he later voluntarily sold the property to the city at the price he now complains. As to an allegation that he failed to convey a counter-offer of $12,500 from the city to Campbell, the evidence shows that only the city council was authorized to make offers and the city manager testified that no such offer was ever made. We find that the trial court did not err in granting plaintiff's motion for a directed verdict.

4. Appellant also enumerates as error the trial court's refusal to direct a verdict in favor of defendant against plaintiff's claim contending that the oral brokerage contract was vague and ambiguous, that after the option had expired appellee had ceased negotiations with the city and he had a right to sell his property to whomever he pleased.

Campbell testified that on Sept. 1, 1977, he was approached by Ramsey, an agent of Mutual Service Corp., who asked if he was interested in selling his property located in land lots 1295 and 1296 of the 16th district of Cobb County and inquired into his asking price; that he replied he would consider selling the land for $15,000 per acre; that he did not discuss the matter further with Ramsey until Sept. 12, 1977, when the broker presented to him a sixty-day option drawn in favor of the City of Marietta for $15,000 an acre with plaintiff to be paid a ten percent commission on the gross sale price at closing; that the only commission agreement between the parties was contained in the option.

Ramsey, plaintiff's president and a real estate broker, testified that he entered into an oral contract with defendant in early Sept., 1977, prior to the preparation of the option; that the oral agreement has never been reduced to writing, and that the parties agreed that plaintiff would procure a purchaser for Campbell's land on Whitlock Avenue in consideration of which plaintiff would receive a commission equal to ten percent of the purchase price ultimately negotiated; that the commission provision in the option was not the contract of employment between plaintiff and defendant and it was simply a part of plaintiff's negotiations with the City of Marietta; that the employment contract was entered into "before there ever was talk of an option and the idea of an option was developed between plaintiff and the city manager after negotiations had been commenced and after he had taken an official of the city out to look at the property"; that during negotiations the city made counter-offers of which Campbell was aware; that during these negotiations Campbell never intimated that plaintiff would not receive the full commission if the land sold for less than $15,000 per acre; that at one meeting

and in plaintiff's presence Campbell offered to split the difference between the city's counter-offer of $8,500 and his original asking price that at one point Campbell did ask if plaintiff would reduce its commission on an asking price of less than $15,000, but plaintiff flatly refused and the matter was never mentioned again although plaintiff and Campbell continued to negotiate with the city.

There is no requirement in Georgia law that a listing contract to sell realty be reduced to writing and oral contracts have been held to be enforceable. See *Cadranel v. Wildwood Const. Co.,* 101 Ga. App. 630 (115 SE2d 415) (1960); *Ellis v. Von Kamp,* 100 Ga. App. 60 (110 SE2d 97) (1959). The record shows that both parties agree as to the general description of the property and the asking price. Appellee contends that the description was supplemented by a plat annotated by the owner, and that he received the plat and was shown the property before Campbell granted the option to the city. "[T]he description of property placed in the hands of a broker for sale [does not need] to be as definite and complete as that which should be made in deeds of conveyance." *Crawford v. English,* 26 Ga. App. 563, 568 (106 SE 621) (1921). If there is doubt of the description of property which is the subject of a listing contract, the description may be aided by extrinsic evidence. *Carter v. Ray,* 70 Ga. App. 419 (28 SE2d 361) (1943).

"[W]here no time limit is fixed by the contract in which the agent shall sell the property of the principal on a commission basis, such agent shall have a reasonable time to perform the service, and what is a reasonable time is a question of fact for determination of a jury." *Spence v. Walker,* 92 Ga. App. 609 (89 SE2d 668) (1955). Where no terms of sale are specified, a cash sale is presumed. *Harrell v. Stovall,* 232 Ga. 359 (206 SE2d 493) (1974).

We find that the oral brokerage contract was not vague as a matter of law and a jury had to determine if such a contract existed between the parties. It was also a jury question as to whether appellee had ceased negotiations with the city after the option expired and whether the oral contract was still in effect. Accordingly, the trial court did not err in denying appellant's motion for a directed verdict.

5. In his fifth enumeration of error, appellant contends that the trial court erred in refusing his fifth request to charge. The court ruled that this request was "jumbled." After reviewing the request, we cannot help but come to the same conclusion. "A request to charge must embody a correct, applicable and complete statement of law and be so couched as not to have a tendency to confuse and mislead the jury and to becloud the issues." *Atlantic C. L. R. Co. v. Brown,* 82 Ga. App. 889, 891 (62 SE2d 736) (1950). The charge as requested contained the following language: "And it further appearing from the evidence that the sale was made for a sum less than named in the agency contract, of which time was the essence." There was no evidence that time was of the essence in the agency contract. Certain parts of the request were argumentative and we find that the court correctly rejected the entire request and fully and fairly covered the substance of the request in its charge.

6. Appellant also contends that the trial court erred in refusing to charge his request to charge number 7 as requested. The record shows that the court charged the request except for the last sentence: "Having reduced their contract to writing, all prior negotiations and agreements pertaining to the subject matter are merged into the writing and superseded by the writing. The trial court struck this sentence from the request holding that it was argumentative. We agree with this ruling.

7. In his final enumeration of error, appellant contends that the trial court erred in refusing to charge his request number ten.

This request was taken directly from some of the provisions contained in Code Ann. § 84-1421 which pertains to the revocation and suspension of the licenses of real estate brokers. While the conduct condemned by the Code section may serve as the basis for an action to recover damages under other statutes, *Campagna v. Sara Hudson Realty Co.,* 137 Ga. App. 451 (224 SE2d 102) (1976), it was not an appropriate charge in this case once a directed verdict had been granted against defendant's counterclaim.

*Judgment affirmed. Shulman, Banke, Birdsong and Underwood, JJ., concur. Quillian, P. J., McMurray, P. J.,*

*Smith and Carley, JJ., dissent.*

Submitted July 2, 1979 — Decided November 2, 1979 — Rehearing denied November 26, 1979 —

A. L. Crawley, for appellant.
Charles Evans, for appellee.

CARLEY, Judge, dissenting.

I respectfully dissent from Division 2 of the majority opinion holding that the trial court did not err in failing to sustain an objection to the testimony of the president of the plaintiff corporation that the defendant stated to him that he was "... gonna do what's right," that defendant "... thought I'd give you $5,000," and that plaintiff's president didn't "... feel like that's quite adequate." The defendant timely objected to this testimony as being inadmissible as an admission or proposition made with a view to compromise as proscribed by Code Ann. § 38-408. The majority holds the prohibition of Code Ann. § 38-408 to be inapplicable and the testimony to be admissible by reliance upon *Williams v. Smith,* 71 Ga. App. 632, 642 (31 SE2d 873) (1944). *Williams* is distinguishable from the case at bar because there defendant did not dispute the execution of the option which was the basis of plaintiff's action but rather contested the enforceability of the option in the action. Here, the threshold inquiry for the jury was as to the existence of the oral contract between plaintiff and defendant.

As seen from the language of *Williams* quoted in the majority opinion, this court in *Williams* relied upon the Supreme Court's decision in *Teasley v. Bradley,* 110 Ga. 497 (6) (35 SE 782, 78 ASR 113). Although the distinctions are subtle and almost imperceptible, there is a discernible difference between the operable facts of the cases presenting permissible testimony of pre-litigation dealings such as *Williams* and *Teasley* and those exemplifying testimony proscribed by Code Ann. § 38-408. That the ruling in *Williams* which is based upon *Teasley* is not dispositive of this case is manifest when it is

recognized that the rationale for the holding in *Teasley* was that "[t]here is a distinction between an offer or proposition to compromise a *doubtful or disputed claim,* and an offer to settle upon certain terms a claim that is *unquestioned.* An admission made in an offer of the latter character will be admissible when one made in an offer of the former character will not." (Emphasis supplied.) *Teasley v. Bradley,* supra, 507. See also *Butts v. Davis,* 126 Ga. App. 311, 315 (190 SE2d 595) (1972). In both *Williams* and *Teasley* the challenged testimony related to offers to settle unquestioned claims. Here the sine qua non of the action was the alleged oral contract, the existence of which was denied by the defendant.

Making an attempted analogy to *Williams,* the majority in this case postulates a strained analysis of the testimony to which objection was interposed by holding that it "does not indicate any effort of the parties to reach a settlement." Viewing this statement in light of the evidence, it appears that the majority conditions the exclusionary effect of Code Ann. § 38-408 upon the existence of some unspecified *degree* of "effort of the parties to reach a settlement." That the defendant mentioned the figure of $5,000 and the plaintiff's representative enunciated that he did not "feel like that's quite adequate" certainly indicates an effort "to reach a settlement," albeit an abortive one. Surely the success of the "effort" is not determinative because if there were a completed settlement, there would be no litigation and no trial and, consequently, no evidence to which the rule could apply.

The public policy objective underlying the exclusionary rule is the encouragement of settlement negotiations and discussions among litigants or prospective litigants. To achieve that goal, this rule assures a party to a dispute that his attempt to settle a potential controversy cannot later be construed as an admission of liability so as to preclude his asserting a claim or raising a defense in a lawsuit.

I think the situation at bar is a perfect example of the harm sought to be avoided by Code Ann. § 38-408. Plaintiff here alleged an oral contract and the defendant denied the existence of the same. By pleading his denial,

he joined issue so that plaintiff had the duty to prove the contract by a preponderance of the evidence. However, at trial plaintiff was allowed to show evidence of defendant's pre-litigation statements which could cause an impartial trior of fact to wonder why the defendant would offer $5,000 if, indeed, no oral contract existed. In short, the defendant's proposition "made with a view to compromise" has returned to haunt him.

Thus, I believe that it is probable that this testimony influenced the jury's verdict which determined that there was an oral contract between the parties. "The rule against allowing evidence of compromises is founded upon recognition of the fact that such testimony is inherently harmful, for the jury will draw conclusions therefrom in spite of anything said by the parties at the time of discussing the compromise, and in spite of anything which may be said by the judge in instructing them as to the weight to be given such evidence." *Georgia R. &c. Co. v. Wallace,* 122 Ga. 547, 551 (50 SE 478) (1905). The law of this state encourages negotiations in an effort to achieve compromise eliminating or minimizing potential litigation. Green, The Georgia Law of Evidence 544, § 254 ; Agnor's Georgia Evidence 196, § 10-21. See also *Newton Bros. v. Shank,* 240 Ga. 471 (241 SE2d 231) (1978); *Taylor v. Aetna Life Ins. Co.,* 235 Ga. 630 (221 SE2d 45) (1975). The effect of the holding of the majority will be to discourage future potential litigants from seeking a non-judicial resolution of their differences and, as a result, the public policy goal of Code Ann. § 38-408 will be thwarted.

For the above reasons, I believe that the challenged testimony was inadmissible and that the failure to exclude the same was harmful error requiring reversal of the judgment entered on the verdict in favor of the appellee. For the above reasons, I respectfully dissent.

I am authorized to state that Presiding Judge Quillian, Presiding Judge McMurray and Judge Smith join in this dissent.